**COMPUSERVE, INCORPORATED,**
**Plaintiff–Appellant,**

v.

**Richard S. PATTERSON, individually,**
**and Flashpoint Development,**
**Defendants–Appellees.**

No. 95–3452.

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1996.

Decided July 22, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 19, 1996.

Stephen D. Jones (argued and briefed), Roetzel & Andress, Columbus, OH and Kent D. Stuckey, Columbus, OH, for plaintiff–appellant.

Richard S. Patterson, Houston, TX, for defendant–appellee.

Before BROWN, KENNEDY, and WELLFORD, Circuit Judges.

BAILEY BROWN, Circuit Judge.

In a case that requires us to consider the scope of the federal courts' jurisdictional powers in a new context, a computer network giant, CompuServe, appeals the dismissal, for lack of personal jurisdiction, of its complaint in which it sought a declaratory judgment that it had not infringed on the defendants' common law copyrights or otherwise engaged in unfair competition. The district court held that the electronic links between the defendant Patterson, who is a Texan,[1]

---

**1.** Although CompuServe sued Patterson and FlashPoint Development as though they were two legal entities, it is clear that, in fact, we are dealing with Patterson d/b/a FlashPoint Development. Thus, we will henceforth refer to a singular defendant.

and Ohio, where CompuServe is headquartered, were "too tenuous to support the exercise of personal jurisdiction." The district court also denied CompuServe's motion for reconsideration. Because we believe that CompuServe made a prima facie showing that the defendant's contacts with Ohio were sufficient to support the exercise of personal jurisdiction, we REVERSE the district court's dismissal and REMAND this case for further proceedings consistent with this opinion.

## I. BACKGROUND

CompuServe is a computer information service headquartered in Columbus, Ohio. It contracts with individual subscribers, such as the defendant, to provide, *inter alia,* access to computing and information services via the Internet, and it is the second largest such provider currently operating on the so-called "information super highway."[2] A CompuServe subscriber may use the service to gain electronic access to more than 1700 information services.[3]

CompuServe also operates as an electronic conduit to provide its subscribers computer software products, which may originate either from CompuServe itself or from other parties. Computer software generated and distributed in this manner is, according to CompuServe, often referred to as "shareware." Shareware makes money only through the voluntary compliance of an "end user," that is, another CompuServe subscriber who may or may not pay the creator's suggested licensing fee if she uses the software beyond a specified trial period. The "end user" pays that fee directly to Compu-

Serve in Ohio, and CompuServe takes a 15% fee for its trouble before remitting the balance to the shareware's creator.[4]

Defendant, Richard Patterson, is an attorney and a resident of Houston, Texas who claims never to have visited Ohio. Patterson also does business as FlashPoint Development. He subscribed to CompuServe, and he also placed items of "shareware" on the CompuServe system for others to use and purchase. When he became a shareware "provider," Patterson entered into a "Shareware Registration Agreement" ("SRA") with CompuServe. Under the SRA, CompuServe provides its subscribers with access to the software, or shareware, that Patterson creates. The SRA purports to create an independent contractor relationship between Patterson and CompuServe, whereby Patterson may place software of his creation on CompuServe's system. The SRA does not mention Patterson's software by name; in fact, it leaves the content and identification of that software to Patterson.

The SRA incorporates by reference two other documents: the CompuServe Service Agreement ("Service Agreement") and the Rules of Operation, both of which are published on the CompuServe Information Service. Both the SRA and the Service Agreement expressly provide that they are entered into in Ohio, and the Service Agreement further provides that it is to "be governed by and construed in accordance with" Ohio law. These documents appear to be standardized and entirely the product of CompuServe. It bears noting, however, that the SRA asks a new shareware "provider" like Patterson to type "AGREE" at various points in the docu-

---

2. "Computer networks are systems of interconnected *computers* that allow the exchange of information between the connected computers. The Internet is the world's largest computer network, often described as a 'network of networks.'" *United States v. Baker,* 890 F.Supp. 1375, 1379 n. 1 (E.D.Mich.1995) (citing Edward A. Cavazos & Gavino Morin, *Cyberspace and the Law: Your Rights and Duties in the On-line World* 2–11 (1994)). *See generally American Civil Liberties Union v. Reno,* 929 F.Supp. 824, 828–31 (E.D.Pa.1996) (describing the Internet, as well as how individuals gain access to it and communicate on it).

3. *See, e.g., id.,* 929 F.Supp. at 832–33 (describing CompuServe and other national commercial services as providing "extensive and well organized content within their own proprietary networks" and "allow[ing] subscribers to link to the much larger resources of the Internet").

4. *See ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1451 (7th Cir.1996) ("Much software is ordered over the Internet by purchasers who have never seen a box. Increasingly software arrives by wire. There is ... only a stream of electrons."); Cavazos & Morin, *supra* note 1, at 63–64 (discussing shareware in the context of copyright laws).

ment, "[i]n recognition of your on line agreement to all the above terms and conditions." Thus, Patterson's assent to the SRA was first manifested at his own computer in Texas, then transmitted to the CompuServe computer system in Ohio.

From 1991 through 1994, Patterson electronically transmitted 32 master software files to CompuServe. These files were stored in CompuServe's system in Ohio, and they were displayed in different services for CompuServe subscribers, who could "download" them into their own computers and, if they chose to do so, pay for them. Patterson also advertised his software on the CompuServe system, and he indicated a price term in at least one of his advertisements. CompuServe asserts that Patterson marketed his software exclusively on its system. Patterson, for his part, stated that he has sold less than $650 worth of his software to only 12 Ohio residents via CompuServe.

Patterson's software product was, apparently, a program designed to help people navigate their way around the larger Internet network. CompuServe began to market a similar product, however, with markings and names that Patterson took to be too similar to his own. Thus, in December of 1993, Patterson notified CompuServe (appropriately via an electronic mail or "E-mail" message[5]) that the terms "WinNAV," "Windows Navigator," and "FlashPoint Windows Navigator" were common law trademarks which he and his company owned. Patterson stated that CompuServe's marketing of its product infringed these trademarks, and otherwise constituted deceptive trade practices. CompuServe changed the name of its program, but Patterson continued to complain. CompuServe asserts that, if Patterson's allegations of trademark infringement are correct, they threaten CompuServe's software sales revenue with a loss of approximately $10.8 million.

After Patterson demanded at least $100,000 to settle his potential claims, CompuServe filed this declaratory judgment action in the federal district court for the Southern District of Ohio, relying on the court's diversity subject matter jurisdiction. CompuServe sought, among other things, a declaration that it had not infringed any common law trademarks of Patterson or FlashPoint Development, and that it was not otherwise guilty of unfair or deceptive trade practices. Patterson responded *pro se* with a consolidated motion to dismiss on several grounds, including lack of personal jurisdiction. Patterson also submitted a supporting affidavit, in which he denied many jurisdictional facts, including his having ever visited Ohio. CompuServe then filed a memorandum in opposition to Patterson's consolidated motion, along with several supporting exhibits.

The district court, considering only these pleadings and papers, granted Patterson's motion to dismiss for lack of personal jurisdiction in a thorough and thoughtful opinion.[6] At various points in its consideration of the case, however, the district court expressly relied on Patterson's affidavit. *Joint Appendix* at 97, 98, 99. The court below then denied CompuServe's motion for a rehearing, which it construed as a motion for reconsideration under Federal Rule of Civil Procedure 59(e). CompuServe timely appealed. Patterson, however, filed no appellate brief, and he did not appear at oral argument.

## II. ANALYSIS

### A. Standards of Review.

■■■■ We conduct a plenary review of personal jurisdiction issues. *E.g., Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1117 (6th Cir.) (citing *Conti v. Pneumatic Prods.*, 977 F.2d 978, 985 (6th Cir.1992)), *cert. denied*, —— U.S. ——, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994). CompuServe, as the party seeking assertion of *in*

---

5. "E-mail allows computer network users to send messages to each other which are received at an 'electronic mailbox' identified by the recipient's unique user name and address." *Baker*, 890 F.Supp. at 1379 n. 1. *See also, e.g., American Civil Liberties Union v. Reno*, 929 F.Supp. at 833–34 (explaining electronic mail).

6. Because the district court held that it lacked personal jurisdiction, it did not reach the other grounds upon which Patterson had sought dismissal.

*personam* jurisdiction, bears the burden of showing that such jurisdiction exists. *E.g.,* *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff—here, CompuServe. *Id.* at 1458–59. To defeat such a motion, a party in CompuServe's position need only make a prima facie showing of jurisdiction. *Id.*

■ Furthermore, a "court disposing of a 12(b)(2) motion **does not weigh** the controverting assertions of the party seeking dismissal," Patterson in this case, because we want "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.* at 1459 (emphasis added). Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff (CompuServe) alleges collectively fail to state a prima facie case for jurisdiction. *Id.*

### B. Personal Jurisdiction.

This case presents a novel question of first impression: Did CompuServe make a prima facie showing that Patterson's contacts with Ohio, which have been almost entirely electronic in nature, are sufficient, under the Due Process Clause, to support the district court's exercise of personal jurisdiction over him?

The Supreme Court has noted, on more than one occasion, the confluence of the "increasing nationalization of commerce" and "modern transportation and communication," and the resulting relaxation of the limits that the Due Process Clause imposes on courts' jurisdiction. *E.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 293, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980) (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Simply stated, there is less perceived need today for the federal constitution to protect defendants from "inconvenient litigation," because all but the most remote forums are easily accessible for the pursuit of both business and litigation. *Id.* The Court has also, however, reminded us that the due process rights of a defendant should be the courts' primary concern where personal jurisdiction is at issue. *Insurance Corp. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982).

■ The Internet represents perhaps the latest and greatest manifestation of these historical, globe-shrinking trends. It enables anyone with the right equipment and knowledge—that is, people like Patterson—to operate an international business cheaply, and from a desktop. That business operator, however, remains entitled to the protection of the Due Process Clause, which mandates that potential defendants be able "to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Thus, this case presents a situation where we must reconsider the scope of our jurisdictional reach.

■ To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Reynolds,* 23 F.3d at 1115. "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Id.* (citing *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir.1972)).

■ The Ohio long-arm statute allows an Ohio court to exercise personal jurisdiction over nonresidents of Ohio on claims arising from, *inter alia,* the nonresident's transacting any business in Ohio. Ohio Rev. Code Ann. § 2307.382(A) (Anderson 1995). It is settled Ohio law, moreover, that the "transacting business" clause of that statute was meant to extend to the federal constitutional limits of due process, and that as a result Ohio personal jurisdiction cases require an examination of those limits. *Reynolds,* 23 F.3d at 1116 (quoting *Creech v. Roberts,* 908 F.2d 75, 79 (6th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717

(1991)); *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir. 1987).

Further, personal jurisdiction may be either general or specific in nature, depending on the nature of the contacts in a given case. *E.g., Reynolds,* 23 F.3d at 1116 (citing *Third Nat'l Bank v. WEDGE Group Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990)). In the instant case, because Compu-Serve bases its action on Patterson's act of sending his computer software to Ohio for sale on its service, CompuServe seeks to establish such specific personal jurisdiction over Patterson. *Id.*

■ As always in this context, the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)); *Reynolds,* 23 F.3d at 1116; *Theunissen,* 935 F.2d at 1459. This court has repeatedly employed three criteria to make this determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Reynolds,* 23 F.3d at 1116 (quoting *In–Flight Devices,* 466 F.2d at 226); *see also Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968) (adopting the above test for "determining the present outerlimits of *in personam* jurisdiction based on a single act").

We conclude that Patterson has knowingly made an effort—and, in fact, purposefully contracted—to market a product in other states, with Ohio-based CompuServe operating, in effect, as his distribution center. Thus, it is reasonable to subject Patterson to suit in Ohio, the state which is home to the computer network service he chose to employ.

■ To support this conclusion, we will address each of the above three criteria *seriatim,* bearing in mind that (1) CompuServe need only make a prima facie case of personal jurisdiction, and (2) we cannot weigh Patterson's affidavit in the analysis, given that the district court addressed his motion to dismiss without holding an evidentiary hearing.[7] *Theunissen,* 935 F.2d at 1459.

**1. The "purposeful availment" requirement.**

■ This court has stated that the question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the *sine qua non* for *in personam* jurisdiction." *Mohasco Indus.,* 401 F.2d at 381–82. The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567); *Reynolds,* 23 F.3d at 1116. Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. at 2183–84 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)).

7. The district court clearly erred in considering Patterson's affidavit. Because we hold that personal jurisdiction exists, we will not belabor that matter. Even were we to consider the affidavit, however, the result would not change.

This requirement does not, however, mean that a defendant must be physically present in the forum state. As the *Burger King Corp.* Court stated, "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* at 476, 105 S.Ct. at 2184. Further, as this court noted long ago,

> Physical presence of an agent is not necessary ... for the transaction of business in a state. The soliciting of insurance by mail, the transmission of radio broadcasts into a state, and the sending of magazines and newspapers into a state to be sold there by independent contractors are all accomplished without the physical presence of an agent; yet all have been held to constitute the transaction of business in a state.

*Mohasco Indus.*, 401 F.2d at 382 (footnotes omitted).

There is no question that Patterson himself took actions that created a connection with Ohio in the instant case. He subscribed to CompuServe, and then he entered into the Shareware Registration Agreement when he loaded his software onto the CompuServe system for others to use and, perhaps, purchase. Once Patterson had done those two things, he was on notice that he had made contracts, to be governed by Ohio law, with an Ohio-based company. Then, he repeatedly sent his computer software, via electronic links, to the CompuServe system in Ohio, and he advertised that software on the CompuServe system. Moreover, he initiated the events that led to the filing of this suit by making demands of CompuServe via electronic and regular mail messages.

The real question is whether these connections with Ohio are "substantial" enough that Patterson should reasonably have anticipated being haled into an Ohio court. The district court did not think so. It looked to "cases involving interstate business negotiations and relationships" and held that the relationship between CompuServe and Patterson, because it was marked by a "minimal course of dealing," was insufficient to satisfy the purposeful availment test. *Compare Reynolds*, 23 F.3d at 1118–21 (holding that the contacts between an England-based association and an Ohio plaintiff in a contract case were "superficial" where, although mail and telephone communications had taken place, the parties had engaged in no prior negotiations and expected no future consequences) *and Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 463–65 (D.C.Cir.1988) (finding no jurisdiction over a nonresident purchaser who had bought services from a corporation in the forum state) *with Burger King Corp.*, 471 U.S. at 479–82, 105 S.Ct. at 2185–87 (finding significant the defendant's reaching beyond Michigan to negotiate with a Florida corporation for the purchase of a long-term franchise). The district court deemed this case closer to *Reynolds* and *Health Communications* than to *Burger King Corp.*, and thus it found no purposeful availment on the part of Patterson.

We disagree. The contract cases upon which the district court relied are both distinguishable in important ways. Patterson, unlike the nonresident defendant in *Reynolds*, entered into a written contract with CompuServe which provided for the application of Ohio law, and he then purposefully perpetuated the relationship with CompuServe via repeated communications with its system in Ohio. And, unlike the nonresident defendant in *Health Communications*, Patterson was far more than a purchaser of services; he was a third-party provider of software who used CompuServe, which is located in Columbus, to market his wares in Ohio and elsewhere.

In fact, it is Patterson's relationship with CompuServe as a software provider and marketer that is crucial to this case. The district court's analysis misses the mark because it disregards the most salient facts of that relationship: that Patterson chose to transmit his software from Texas to CompuServe's system in Ohio, that myriad others gained access to Patterson's software via that system, and that Patterson advertised and sold his product through that system. Though all this happened with a distinct paucity of tangible, physical evidence, there can be no doubt that Patterson purposefully transacted

business in Ohio. *See Plus System, Inc. v. New England Network, Inc.*, 804 F.Supp. 111, 118–19 (D.Colo.1992) (finding personal jurisdiction over a nonresident computer network defendant because, *inter alia*, that defendant benefitted from the intangible computer services provided by the plaintiff's own computer network system); *cf. United States v. Thomas*, 74 F.3d 701, 706–07 (6th Cir.1996) (upholding a conviction under federal obscenity laws where the defendants transmitted computer-generated images across state lines, despite the defendants' argument that the images were intangible), *petition for cert. filed*, 64 U.S.L.W. 3839 (U.S. June 10, 1996) (No. 95–1992).

Moreover, this was a relationship intended to be ongoing in nature; it was not a "one-shot affair." *Mohasco Indus.*, 401 F.2d at 385. Patterson sent software to CompuServe repeatedly for some three years, and the record indicates that he intended to continue marketing his software on CompuServe. As this court has often stated,

> [B]usiness is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that the transaction would have consequences in that state.

*Id.* at 382–83 (footnote omitted). Patterson deliberately set in motion an ongoing marketing relationship with CompuServe, and he should have reasonably foreseen that doing so would have consequences in Ohio.

██ Admittedly, merely entering into a contract with CompuServe would not, without more, establish that Patterson had minimum contacts with Ohio. *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. at 2185. By the same token, Patterson's injection of his software product into the stream of commerce, without more, would be at best a dubious ground for jurisdiction. *Compare Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (O'Connor, J.) (plurality op.) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.") *with id.* at 117, 107 S.Ct. at 1034–35 (Brennan, J., concurring in part) (rejecting the plurality's position on the stream of commerce theory). Because Patterson deliberately did both of those things, however, and because of the other factors that we discuss herein, we believe that ample contacts exist to support the assertion of jurisdiction in this case, and certainly an assertion of jurisdiction by the state where the computer network service in question is headquartered.

We find support for our conclusion in the Ohio Supreme Court case of *U.S. Sprint Communications Co. Limited Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052–54 (1994). In that case, the court held that a foreign corporation "transacted business" in Ohio, and thus was subject to personal jurisdiction, where it frequently made long-distance telephone calls to Ohio to sell its products, had distribution facilities in Ohio for its products, and shipped goods to Ohio for ultimate sale. Similarly, Patterson frequently contacted Ohio to sell his computer software over CompuServe's Ohio-based system. Patterson repeatedly sent his "goods" to CompuServe in Ohio for their ultimate sale. CompuServe, in effect, acted as Patterson's distributor, albeit electronically and not physically.

██ Further, we must reject the district court's reliance on the *de minimis* amount of software sales which Patterson claims he enjoyed in Ohio. As this court recently stated, "It is the **'quality'** of [the] contacts," and not their number or status, that determines whether they amount to purposeful availment. *Reynolds*, 23 F.3d at 1119 (emphasis added) (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990)). Patterson's contacts with CompuServe here were deliberate and repeated, even if they yielded little revenue from Ohio itself.

Moreover, we should not focus solely on the sales that Patterson made in Ohio, because that ignores the sales Patterson may

have made through CompuServe to others elsewhere. Patterson sought to make those sales from Texas by way of CompuServe's system in Ohio, and the sales then involved the passage of funds through Ohio to Patterson in Texas. This case is thus analogous to the *Mohasco Industries* case, 401 F.2d at 383–86, where this court held that jurisdiction was proper where a nonresident defendant both (a) entered a licensing contract for the plaintiff to manufacture and sell equipment in the forum state, and (b) contemplated the ongoing marketing of that equipment in the forum state and elsewhere.

We also find instructive the Supreme Court case of *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which held that due process did not prohibit California from asserting jurisdiction over a Texas insurance company based upon its issuance of a single insurance contract in California and the receipt of premium payments mailed from California. The *McGee* Court reasoned that (1) the company had consciously sought the contract with the California insured, and (2) "the suit was based on a contract which had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201.

Similarly, in the instant case, Patterson consciously reached out from Texas to Ohio to subscribe to CompuServe, and to use its service to market his computer software on the Internet. He entered into a contract which expressly stated that it would be governed by and construed in light of Ohio law. Ohio has written and interpreted its long-arm statute, and particularly its "transacting business" subsection, with the intent of reaching as far as the Due Process Clause will allow, and it certainly has an interest "in providing effective means of redress for its residents." *Id.* As the *Burger King Corp.* Court noted, the purposeful direction of one's activities toward a state has always been significant in personal jurisdiction cases, particularly where individuals purposefully derive benefits from interstate activities. *Burger King Corp.*, 471 U.S. at 472–73, 105 S.Ct. at 2181–83. Moreover, the Court continued, it could be unfair to allow individuals who purposefully engage in interstate activi-

ties for profit to escape having to account in other states for the proximate consequences of those activities. *Id.* (citing *Kulko v. Superior Court*, 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978)).

Finally, we note this court's own finding of purposeful availment based (in part) on analogous litigation threats in *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988). The *American Greetings Corp.* case involved an Ohio corporation's suit, in Ohio, against a California shareholder who had threatened to file a lawsuit to invalidate an amendment to the company's articles of incorporation. *Id.* at 1165. The district court dismissed the case, without conducting an evidentiary hearing, for lack of personal jurisdiction, finding that the defendant merely owned stock in an Ohio company and expressed strong reservations about a matter of shareholder interest. *Id.* at 1166. This court reversed, finding purposeful availment because of the defendant's letters and telephone calls to Ohio, in which he had threatened suit and had sought money to release his claim. Thus, this court stated, the defendant himself had "originated and maintained the required contacts with Ohio." *Id.* at 1170.

In the instant case, the record demonstrates that Patterson not only purposefully availed himself of CompuServe's Ohio-based services to market his software, but that he also "originated and maintained" contacts with Ohio when he believed that CompuServe's competing product unlawfully infringed on his own software. Patterson repeatedly sent both electronic and regular mail messages to CompuServe about his claim, and he posted a message on one of CompuServe's electronic forums, which outlined his case against CompuServe for anyone who wished to read it. Moreover, the record shows that Patterson demanded at least $100,000 to settle the matter.

Thus, we believe that the facts which CompuServe has alleged, viewed in the light most favorable to CompuServe, support a finding that Patterson purposefully availed himself of the privilege of doing business in Ohio. He knowingly reached out to CompuServe's Ohio home, and he benefitted from CompuServe's

handling of his software and the fees that it generated.

## 2. The requirement that the cause of action arises from Patterson's activities in Ohio.

■ Even though we have found that Patterson purposefully availed himself of Ohio privileges, we must also find that CompuServe's claims against him arise out of his activities in Ohio if we are to find the exercise of jurisdiction proper. *Reynolds,* 23 F.3d at 1116–17. If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts. *Id.* at 1119 (quoting *Creech,* 908 F.2d at 80).

■ The district court viewed the presence of Patterson's software on the CompuServe system in Ohio as "entirely incidental to the alleged dispute between the parties." In the district court's opinion, Patterson could have claimed trademark or trade name protection for his software against CompuServe even if he had placed his software on another computer network altogether, or in a retail store. Patterson's discovery of the similarity in program names may have come to his attention through the CompuServe system, the court below noted, but it concluded that "the way in which the parties discovered they might have a clash of legal interests is not relevant to the issue of jurisdiction."

Again, we must disagree with the district court's holding. The cause of action in the instant case concerns allegations of trademark or trade name infringement and unfair competition. Patterson's contacts with Ohio are certainly related to the operative facts of that controversy. He placed his software on CompuServe's Ohio-based system. He used that system to advertise his software and sell it. The proceeds of those sales flowed to him through Ohio. According to CompuServe's allegations, Patterson has marketed his product exclusively on their system.

As the district court points out, Patterson could have placed his software anywhere and had the same result. Nevertheless, it is uncontroverted that Patterson placed, marketed, and sold his software **only** on Ohio-based CompuServe. Thus, any common law trademark or trade name which Patterson might have in his product would arguably have been created in Ohio, and any violation of those alleged trademarks or trade names by CompuServe would have occurred, at least in part, in Ohio. *See United States v. Steffens,* 100 U.S. 82, 94, 25 L.Ed. 550 (1879) (stating that trademark rights, under the common law, are appropriated only through actual prior use in commerce); *Dakota Indus. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388 (8th Cir.1991) (stating that the tort of trademark infringement is considered to have occurred where the passing off of the allegedly infringing goods occurred); *Tally–Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1022 (11th Cir.1989) (stating that where, as here, neither party has registered a disputed trademark with the federal government, the parties must look to common law and state statutes to determine what protection they have); *Younker v. Nationwide Mut. Ins. Co.,* 175 Ohio St. 1, 191 N.E.2d 145, 148–49 (1963) (defining trade name and trademark and stating that only the actual use of those devices in connection with a business gives rise to legal rights); *Yocono's Restaurant, Inc. v. Yocono,* 100 Ohio App.3d 11, 651 N.E.2d 1347, 1350–51 (1994) (discussing the intersection of Ohio's Deceptive Trade Practices Act, the common law, and the federal Lanham Act).

Moreover, as noted heretofore with regard to the purposeful availment test, CompuServe's declaratory judgment action arose in part because Patterson threatened, via regular and electronic mail, to seek an injunction against CompuServe's sales of its software product, or to seek damages at law if CompuServe did not pay to settle his purported claim. Thus, Patterson's threats—which were contacts with Ohio—gave rise to the case before us, as did the threats in the *American Greetings Corp.* case, 839 F.2d at 1170.

## 3. The reasonableness requirement.

■ Lastly, we consider whether exercising personal jurisdiction over Patterson

would be reasonable, i.e., whether it would "comport with 'traditional notions of fair play and substantial justice.'" *Reynolds*, 23 F.3d at 1117 (quoting *Asahi Metal Indus.*, 480 U.S. at 113, 107 S.Ct. at 1032–33). We note that, if we find, as we do, the first two elements of a prima facie case—purposeful availment and a cause of action arising from the defendant's contacts with the forum state—then an inference arises that this third factor is also present. *American Greetings Corp.*, 839 F.2d at 1170 (citing *First Nat'l Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982)); *Mohasco Indus.*, 401 F.2d at 384 & n. 30.

▮ A court must consider several factors in this context, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *American Greetings Corp.*, 839 F.2d at 1169–70 (citing *Asahi Metal Indus.*, 480 U.S. at 113, 107 S.Ct. at 1032–33).

▮ The district court analogized the instant case to a standard consumer suit in which CompuServe might have brought suit in Ohio "to collect a small amount of user fees from a Texas resident who, while seated at his computer terminal, became a member of the CompuServe network."

That is not, however, the case at bar. Here, we have an entrepreneur who purposefully employed CompuServe to market his computer software product. It may be burdensome for Patterson to defend a suit in Ohio, but he knew when he entered into the Shareware Registration Agreement with CompuServe that he was making a connection with Ohio, and presumably he hoped that connection would work to his benefit. Further, Ohio has a strong interest in resolving a dispute involving an Ohio company, which will involve the Ohio law on common law trademarks and trade names.[8] CompuServe alleges that more than $10 million

could be at stake in this case, and it also contends that this case will have a profound impact on its relationships with other "shareware" providers like Patterson, who also directed their activities toward Ohio-based CompuServe. We have no reason to believe otherwise.

Again, considering the pleadings and affidavits in a light most favorable to CompuServe (as we must), we find that, on these facts, there is a substantial enough connection between Patterson and Ohio to make it reasonable for an Ohio court to assert personal jurisdiction over him.[9] Someone like Patterson who employs a computer network service like CompuServe to market a product can reasonably expect disputes with that service to yield lawsuits in the service's home state.

Finally, because of the unique nature of this case, we deem it important to note what we do not hold. We need not and do **not** hold that Patterson would be subject to suit in **any** state where his software was purchased or used; that is not the case before us. *See World–Wide Volkswagen*, 444 U.S. at 296, 100 S.Ct. at 566–67 (rejecting the idea that a seller of chattels could "appoint the chattel his agent for service of process"). We also do not have before us an attempt by another party from a third state to sue Patterson in Ohio for, say, a "computer virus" caused by his software, and thus we need not address whether personal jurisdiction could be found on those facts. Finally, we need not and do not hold that CompuServe may, as the district court posited, sue any regular subscriber to its service for nonpayment in Ohio, even if the subscriber is a native Alaskan who has never left home. Each of those cases may well arise someday, but they are not before us now.

### III. CONCLUSION

Because we believe that Patterson had sufficient contacts with Ohio to support the ex-

---

8. Texas also, of course, has an interest in this dispute involving one of its citizens. It also bears noting that, as Patterson pointed out in the court below, CompuServe is a subsidiary of H & R Block, and both of those entities have divisions which are located in Texas.

9. Our conclusion on the jurisdictional issue moots the issue of the district court's denial of CompuServe's motion for reconsideration.

ercise of personal jurisdiction over him, we REVERSE the district court's dismissal and REMAND this case for further proceedings consistent with this opinion.