LIFESTYLE LIFT HOLDING, INC., Plaintiff,

v.

Stephen A. PRENDIVILLE, M.D., Defendant.

Case No. 10–11874.

United States District Court, E.D. Michigan, Southern Division.

March 9, 2011.

Michael C. McKinnon, Zorn Law Firm, Troy, MI, for Plaintiff.

Alexander D. Bommarito, Joseph T. Collison, Collison & Collison, Saginaw, MI, for Defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

AVERN COHN, District Judge.

### I. Introduction

This is a business dispute, involving claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), defamation, and tortious interference with a business relationship. Plaintiff, Lifestyle Lift Holding Company, Inc. (LLH), is a Michigan corporation. Defendant, Stephen A. Prendiville (Prendiville), is a citizen of Florida. The actions giving rise to the dispute involve postings made by Prendiville to an internet website.

Before the Court is Prendiville's motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.[1] For the reasons that follow, the motion will be granted.

### II. Background

#### A.

LLH is the holder of U.S. Trademark No. 3,102,900 for the mark "Lifestyle Lift," which identifies a cosmetic surgery procedure that LLH uses at its several locations across the United States. LLH has promoted the "Lifestyle Lift" procedure using radio and television advertising as well as on the internet at http://www.lifestylelift.com. Prendiville is a plastic surgeon practicing in Fort Myers, Florida in direct competition with LLH's licensed facilities. LLH has at least five locations in Florida, including Fort Myers.

Prendiville is also a registered user of the online forum RealSelf.com. RealSelf.com is a social media site focused on connecting consumers interested in elective, medically-administered aesthetics—cosmetic surgery, dermatology, dental, and vision procedures. RealSelf contains three sections: RealSelf Reviews which offers consumer reviews on cosmetic treatments, ranging from Liposuction to Laser skin treatments to Lasik; RealSelf Q & A Forum, a community network where health professionals (board certified plastic surgeons, dermatologists, as well as cosmetic dentists) answer questions posed by community members; and the RealSelf Worth It Index, which ranks treatments by the "was it worth it" ratings that users provide in their reviews.

Doctors, such as Prendiville, who are registered to post answers from consumers in the RealSelf Q & A forum have a "home page" or a "blog" which act both as a listing of Q & A postings and as an advertisement of the services offered by that physician. The page also includes

---

1. Prendiville also argues that the complaint is subject to dismissal under Rule 12(b)(6) for failure to state a claim. However, Prendiville has not moved for dismissal under Rule 12(b)(6) and did not address LLH's arguments against dismissal in his reply brief. Also, given the Court's ruling on personal jurisdiction, it is not necessary, or appropriate, to address the Rule 12(b)(6) arguments.

"Request Information" webmail interface which allows interested consumers to inquire with the doctor about his or her services.

Prendiville also has an independent web presence on the internet at http://www.drprendiville.com. A review of this website reveals that Prendiville uses it to advertise his practice in Fort Myers, Florida. The "Contact Us" section of this site (http://www.drprendiville.com/contact.html) contains the address and phone number of his office as well as a hyperlink by which activates an e-mail program to allow the user to send a message to Prendiville.

In February of 2009, Prendiville posted the following message on a question and answer message board at Realself.com: "Lifestyle Lift: Its just a marketing entity." Lifestyle Lift can be equated to an 'Ask Gary' in legal terms or a "1–800 Dentist." In January of 2010, Prendiville posted more messages on the same website: "Many of the results shown appear to have been multi-hour procedures and are not the results that your average Lifestyle Lift journeyman will be able to achieve in 'about an hour.'" "[C]hoose the Surgeon, not some hyped-up quickie procedure performed by journeymen surgeons." In April of 2010, Prendiville posted on the site again: "Why would any surgeon work for Lifestyle Lift? There are two reasons, because a successful surgeon is very unlikely to choose this career path: a) just out of training and need the business, b) have been in practice for years and never attained any degree of success."

### B.

LLH says that Prendiville's statement regarding the "Lifestyle Lift" procedure violate 15 U.S.C. § 1125(a)(1)(B); were false and defamatory statements made with the intent to injure LLH; and consti-

tute tortious interference with a business relationship.

### C.

Prendiville argues that he is not subject to personal jurisdiction in Michigan by virtue of placing comments about "Lifestyle Lift" on a website. He further says he has no contacts with Michigan which would justify being haled into this forum.

## III. Personal Jurisdiction

### A. Generally

LLH bears the burden of establishing personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002). When, as in this case, a court rules on a jurisdictional motion to dismiss without an evidentiary hearing, the pleadings and affidavits are considered in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998). In this circumstance, the plaintiff must make a prima facie showing of jurisdiction; the court does not consider the controverting assertions of the party moving for dismissal. *Id.*

When a federal court's subject matter jurisdiction is based on the existence of a federal question, the court can only exercise jurisdiction over the defendant if the defendant is amenable to service of process under the forum's long-arm statute and the exercise of personal jurisdiction does not deprive the defendant of their due process rights. *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). The court's jurisdiction comports with due process "when defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir.2005).

In this case, LLH is not invoking general jurisdiction, but limited jurisdiction.

Michigan's Long Arm Statute describes the circumstances under which a court may exercise limited personal jurisdiction over a party:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or causing consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within the state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of or having its principle place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705 (2007).

"When a state's long-arm statute reaches as far as the limits of the Due Process Cause, the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction violates constitutional due process." *Intera Corp.*, 428 F.3d at 616 (citing *Aristech Chem. Intl. v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir.1998)). Michigan's limited personal jurisdiction provisions extend the state's jurisdiction to the limits permitted by due process requirements, thus this Court need only perform one inquiry under the Due Process Clause. *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150 (6th Cir.1990); *Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir.2003).

■ The Sixth Circuit uses a three-part test in determining whether, consistent with due process, a court may exercise limited personal jurisdiction: 1) the defendant must purposefully avail themself of the privilege of acting in the forum state or causing a consequence to occur there; 2) the cause of action must arise from the defendant's activities there; and 3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over him reasonable. *So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). In the Sixth Circuit, there is an inference that the exercise of jurisdiction is reasonable where the first two elements of personal jurisdiction have been satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir.1996).

■ With respect to purposeful availment, the defendant must do some act whereby the defendant purposefully avails themself of the privilege of doing business in Michigan. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). There must be a substantial connection between the defendant's conduct and the state such that the defendant "should reasonably anticipate

being hauled into court there." *Id.* at 474, 105 S.Ct. 2174. The purposeful availment requirement protects the defendant from being subject to a court's jurisdiction as a result of "random, fortuitous, or attenuated contacts." *Id.* at 475, 105 S.Ct. 2174. " 'Purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." *Sports Auth. Mich. Inc. v. Justballs, Inc.,* 97 F.Supp.2d 806, 811 (E.D.Mich.2000).

## B.  Internet Libel Jurisdiction

Here, LLH's claims against Prendiville are based on his allegedly libelous actions over the internet. While LLH has made a claim under the Lanham Act, this is not a case involving Prendiville's improper use of LLH's marks, i.e. a traditional trademark infringement action. Rather, this case concerns Prendiville's words, found on the internet at his RealSelf page, about LLH's business, particularly the Lifestyle Lift cosmetic procedure. Determining personal jurisdiction in a case of internet libel is a thorny proposition.

> As one commentator aptly noted:
> Internet libel cases are thus subject to two powerful cross currents. One is the *Zippo* line of cases suggest that the interactivity of the form of the publication is critical. The other is driven by the *Calder* and *Keeton* holdings suggesting that any significant, knowing publication of the defamatory material in the forum create minimum contacts.

Patrick J. Borchers, *Internet Libel: The Consequences of a Non–Rule Approach to Personal Jurisdiction,* 98 N.w. U.L. Rev. 473, 481 (2004). Both approaches are considered below.

## C.  The *Zippo* Sliding Scale

Courts have grappled with personal jurisdiction with the rise of the internet. The first of such efforts is an opinion from the Western District of Pennsylvania, which defined three categories of interactivity for a website, commonly referred to as the "*Zippo* sliding scale." *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119 (W.D.Pa.1997). The first category is a highly interactive website, which gives others the ability to download and enter into contracts. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996). This category is sufficient for a Court to exercise personal jurisdiction. *Id.* The second category is "a middle ground where information can be exchanged between the viewer and the host computer. In such a case, the court examines the level of interactivity and the commercial nature of the exchange of the information." *Zippo,* 952 F.Supp. at 1124; *see Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 564–65 (S.D.N.Y.2000). The last category is where the defendant makes information available on an otherwise passive website. *Id. Maynard v. Philadelphia Cervical Collar Co., Inc.,* 18 Fed.Appx. 814, 816–17 (Fed.Cir.2001) (citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419–20 (9th Cir.1997); *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336–37 (5th Cir.1999)). A "passive" website is one that simply provides information; customers cannot transact business (e.g., purchase products) on a passive website. *Maynard,* 18 Fed.Appx. at 816–17. A website is passive even when it contains information regarding a company's products and services and displays the company's contact information. *See id.* at 817. A "passive website is insufficient to establish purposeful availment for the purpose of due process." *McGill v. Gourmet Technologies, Inc.,* 300 F.Supp.2d 501, 507

(E.D.Mich.2004) (quoting *Maynard,* 18 Fed.Appx. at 816–17).

Although *Zippo* has been criticized by courts and commentators,[2] the Sixth Circuit utilized its sliding scale analysis in a personal jurisdiction case involving the Internet. *See Neogen Corp. v. Neo Gen Screening,* 282 F.3d 883 (6th Cir.2002).

### D. Prendiville's Actions Under the *Zippo* Sliding Scale

LLH argues that personal jurisdiction over Prendiville exists based on the level of interactivity of two websites: RealSelf.com and drprendiville.com. However, because the dispute arises solely from Prendiville's activities on the Realself.com site, only that site will be considered.

As to Realself.com, Prendiville's "home page" or "blog," is found at: www.realself.com/find/Florida/Ft.-Myers/Facial-Plastic-Surgeon/Stephen-Prendiville. On this page, there is a section which permits users to email Prendiville to ask questions and inquire about services. The page has additional features such as the "Special Offers" check boxes which permit potential patients to receive virtual coupons for "$50 off Fractionated eCO2 laser" and "Season Special on Botox and Filler." The page identifies Prendiville as a plastic surgeon in Fort Myers, Florida and lists his address in Fort Myers. As noted above, also on this page are links to articles by Prendiville and postings regarding Lifestyle Lift.

Considering the above, Prendiville's page on the Realself.com website arguably falls into the "middle ground" category of website interactivity. It permits the exchange of information between Prendiville and potential customers and he uses it to advertise his services. As such, the information is business related. However, there is no assertion, or evidence, that Prendiville has used the page to make a single sale in Michigan or any other state.

Another judge in this district was presented with a similar internet based personal jurisdiction issue in *Visage Spa, LLC v. Salon Visage, Inc.,* No. 06–10756, 2006 WL 2130512 (E.D.Mich. July 28, 2006). In *Visage Spa,* plaintiff, a Michigan LLC sued "Salon Visage" a Tennessee corporation which operated a hair salon in Knoxville, "Spa Visage," a Tennessee LLC which offered full service spa treatments in Knoxville, and Steven Smith, a physician who performed cosmetic surgery in Tennessee. Plaintiff claimed that defendants infringed its "Visage Spa" mark. Both Salon Visage and Spa Visage had websites at www.salonvisage.com and www.spavisage.com, respectively and the mark could be viewed on the homepage of both sites. The websites offered to browsers the option of purchasing gift certificates online to Salon Visage and Spa Visage. The gift certificates could only be used at the defendants' locations in Knoxville, Tennessee. However, there was evidence that Spa Visage sold one gift certificate to a Michigan resident. In addition, Salon Visage and Spa Visage had reciprocal links on their websites which led a websurfer to the other company's website. One could not make reservations online, but Spa Visage planned on implementing this capability in the near future. The mark also appeared on Smith's website he offered services to clients of Spa Visage. The site stated that Smith was available to see patients at Spa Visage. Defendants moved to dismiss for lack of personal jurisdiction. The district

---

**2.** *See, e.g.* Robert M. Harkins, Jr., *The Legal World Wide Web: Electronic Personal Jurisdiction in Commercial litigation, or How to Expose Yourself to Liability Anywhere in the World with the Press of a Button,* 25 Pepp. L. Rev. 451, 475–76 (1997); *The Winfield Collection, Ltd. v. McCauley,* 105 F.Supp.2d 746 (E.D.Mich.2000).

court granted the motion as to Smith and Salon Visage, but denied it as to Spa Visage. As to the latter, it stated that:

> If [Visage] Spa was not intending for residents of Michigan to purchase gift certificates from its website, then it would have limited its sales to states other than Michigan, or simply refused to sell to anyone located in Michigan. This could have been easily accomplished by a message posted on [Visage] Spa's website where it sells its gift certificates stating that its sales are limited to Tennessee residents, or by refusing to offer "Michigan" as a state that can be placed in the billing address page when placing an order. The information exchanged over the internet during the purchase of [Visage] Spa's gift certificates was sufficient for [Visage Spa] to reasonably anticipate being haled into court in this state. Indeed, while [Visage Spa] argues that "goods" or "products" cannot be purchased on [Visage] Spa's website, [Visage] Spa makes money when the gift certificates are purchased, not when the services are rendered; the sale is made regardless of whether the gift certificate is ever redeemed. Accordingly, the Court finds that Plaintiff has met its prima facie burden of demonstrating that [Visage] Spa has purposefully availed itself of the privileges of conducting business in this jurisdiction.

*Visage Spa*, 2006 WL 2130512, at *8.

Here, as in *Visage Spa*, Prendiville is a purveyor of skin care/plastic surgery services who uses Realself to interact with the public. Like the Visage Spa defendant, Prendiville does not provide services in Michigan, only at his clinic in Ft. Myers. However, his page on Realself offers discounts or coupons for services, akin to Visage Spa's gift certificates. While Prendiville makes no attempt on his page to limit the geographic distribution of the coupons or restrict sales to Florida residents, there is no evidence that any Michigan resident took advantage of his coupons. This fact is significant. Indeed, the same district judge who decided *Visage Spa*, suggested in a later case addressing personal jurisdiction, that jurisdiction over Visage Spa was predicated upon the gift certificate sale to a Michigan resident. *See American Pie Pizz, Inc. v. Holton Holdings, LLC*, No. 10–cv–13106, 2011 WL 334272, at * 7 (E.D.Mich. Jan. 31, 2011). Thus, *Visage Spa* is not as analogous as LLH suggests.

■ Overall, the Court is not satisfied that Prendiville's page on the Realself website is sufficiently interactive to show that he purposefully availed himself of doing business in Michigan. Purposeful availment must be "something more than a passive availment of Michigan opportunities." *Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 153–154, 273 N.W.2d 811 (1978). While Prendiville's page on RealSelf is beyond passive, it is low on the scale of interactivity. There is nothing to show Prendiville specifically intended to, or has, interacted with residents of Michigan. There is no evidence that Prendiville has received business from Michigan or otherwise had any contact with a Michigan resident through the page. Under these circumstances, personal jurisdiction cannot be found under the *Zippo* analysis.

### E. The Effects Test

Purposeful availment necessary to establish personal jurisdiction may also be found applying the so-called the "effects" test adopted by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, a professional entertainer filed a libel action in California against the writer of an article published in the National Enquirer and

the president and editor of the newspaper. The Supreme Court held that the "effects" of the defendants' intentional tortious conduct, which the defendants could expect to be felt in California under the circumstances of the case, were sufficient for the California courts to exercise jurisdiction over them. As the Court explained:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

465 U.S. at 788–89, 104 S.Ct. at 1486–87.

Thus the Court concluded that the defendants "reasonably anticipate[d] being haled into court [in California]" because they knew the article "would have a potentially devastating impact upon [the plaintiff]" and that the "brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works and in which the National Enquirer has its largest circulation." 465 U.S. at 788–89, 104 S.Ct. at 1486–87.

■ Under the effects test, a plaintiff must prove: (1) defendant acted intentionally rather than " 'mere untargeted negligence.' " *Ford Motor Co. v. Great Domains, Inc.*, 141 F.Supp.2d 763, 773–74 (E.D.Mich.2001), (2) defendant's acts were expressly aimed at the State of Michigan; and (3) the brunt of the injuries were felt in Michigan. *See Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F.Supp.2d 734, 746 (E.D.Mich.2004). Courts have warned, however, that the effects test should be applied with caution because the

plaintiff will always feel the effects of an injury in its home state. *See, e.g., Audi AG*, 341 F.Supp.2d at 746–47.

### F. Prendiville's Actions Under the Effects Test

#### 1. Intentional Acts

■ If a party intentionally commits a tort against another it should anticipate being haled into court in that person's home state. *Audi*, 341 F.Supp.2d at 747. Using a mark that is universally known to be another entity's trademark indicates intentional infringement. *See, e.g., Audi AG*, 341 F.Supp.2d at 748 (finding Audi trademark was "widely known"); *Great Domains*, 141 F.Supp.2d at 774 (finding that the Ford, Jaguar, and Volvo trademarks are well-known throughout most of the world). While this is not a trademark case, defamation or libel are likewise considered intentional acts. The Court will therefore assume this element of the effects test has been met.

#### 2. Expressly Aimed at the Forum State

■ Courts have struggled to define precisely what satisfies this prong and noted that because of wide-ranging access to the internet, application of the effects test is particularly difficult. *See, e.g., Great Domains*, 141 F.Supp.2d at 774. Injury to a forum resident, standing alone, however, is not enough. *Weather Underground*, 688 F.Supp.2d at 700 (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir.2008)). There must be "something more" to demonstrate the defendant directed his activity toward the forum state. *Id.* (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998)); *see also Imago Eyewear*, 2004 WL 5569067, at *7 (detailing the "something more" in several cases).

■ This is where the effects test militates against a finding of personal jurisdiction in this case. In the Court's view, in order to properly evaluate Prendiville's internet actions, it is necessary to look at LLH's presence on the internet. A visit to LLH's website, http://lifestylelift.com, shows that the company markets itself nationally. A search of LLH's various pages on the website fails to indicate that it is a Michigan company. Indeed, a click on "Locations" shows a map displaying offices all over the United States, with several in Florida, including Fort Myers. While under "Doctors," the Founder Dr. David M. Kent is described as having practiced in metropolitan Detroit, there are several other doctors listed as Regional Medical Directors, located all over the United States. While LLH argues that Prendiville made his postings knowing full well that LLH was based in Michigan and that LLH would feel the effects of such postings in Michigan, a review of LLH's website fails to convince the Court that Prendiville's comments can be viewed as being expressly aimed at Michigan.

Even if Prendiville knew about LLH being based in Michigan,[3] does not necessarily satisfy the expressly aimed at prong. In *Providers Access & Sav. Sys., Inc. v. Regence Group, Inc.*, No. 06–15367, 2007 WL 1106145, at *7 (E.D.Mich. Apr. 12, 2007), the plaintiff owned the registered trademark "MedAdvantage." Plaintiff MedAdvantage LLC was the exclusive licensee of the MedAdvantage mark and used it as the name of a program it ran that offered discount health care plans to members. As part of the program, participants were given a card called the "MedAdvantage Card" which entitled members to discounts on various services and prescription drugs. Plaintiff sued defendant, a non-profit company headquartered in Oregon, for trademark infringement. Through affiliate corporations, defendant began offering medical insurance plans in 2005 predicated on changes Congress made in the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "2003 Act"). Defendant was only authorized by the government to market its program to Medicare recipients living in certain counties in Oregon, Washington, Utah, and Idaho. Defendant was required, however, to terminate coverage for members who stay outside the area serviced by the defendant for more than six months. Defendant's plans were called "MedAdvantage" and "MedAdvantage + Rx."

Defendant moved to dismiss for lack of personal jurisdiction. Defendant argued that the plans' names were based on Congress' decision to change the name of the "Medicare + Choice" program to "Medicare Advantage" in the 2003 Act. Defendant presented evidence that the term "MedAdvantage" had become a generic, shorthand reference to the "Medicare Advantage" program of the 2003 Act.

---

3. LLH says that Prendiville is aware that it is a Michigan company because he is listed as an expert witness for a plaintiff in a case filed against LLH in another district, *Faktor, et. al. v. Lifestyle Lift*, Case No. 1:09cv911 (N.D.Ohio Mar. 6, 2009). LLH also says that on April 28, 2010, Kenneth Zorn, general counsel for LLH, sent Prendiville a letter on company letterhead which stated in part that "[w]e have been following your comments on RealSelf.com and many cross the line of opinion to that of being false, defamatory and dispar-

aging." The letter also references a phone conversation between Prendiville and its founder, Kent, in which Kent invited Prendiville to visit LLH's offices in Troy, Michigan; Prendiville declined. The Court does not find that either of these events are sufficient to establish personal jurisdiction. Even if Prendiville became aware that LLH is based in Michigan through these events, it does not follow that his postings about the Lifestyle Lift were expressly aimed at LLH in Michigan and not just LLH generally.

The district court granted the defendant's motion to dismiss for lack of personal jurisdiction because the plaintiffs failed to satisfy the effects test. Although the district court found no evidence that defendant was aware the plaintiff had trademarked the term MedAdvantage, it held that "even if the Court assumes that [the defendant] had actual or constructive knowledge of [the plaintiffs] ownership of the MedAdvantage marks and deliberately infringed those marks" it did not believe the plaintiff had made a prima facie showing that the defendant's conduct was "aimed at Michigan based simply on that knowledge and [p]laintiffs' presence in the forum." *Id.*, at *7 (internal quotation marks omitted). The district court noted, "something more is necessary to demonstrate that the defendant's actions were aimed at the forum state than use of a mark knowing that the owner of the mark lives in the forum." *Id.*

Here, LLH cannot identify the "something more" to show that Prendiville's actions were expressly aimed at LLH in Michigan. Given LLH's national presence, it cannot be said that Prendiville was targeting LLH in Michigan any more than any other state which has a Lifestyle Lift location.

### 3. Brunt of the Injury

As to this factor, although LLH is based in Michigan, it cannot be said that Michigan is the only state where injuries can occur. LLH is not simply a Michigan company located solely in Michigan. Prendiville's comments about the Lifestyle Lift procedure can be said to pertain to LLH's locations all over the country. Indeed, it is not unreasonable to find that the brunt of any injury to the LLH facilities in Florida, where Prendiville competes with LLH's locations. It is far more likely that Prendiville's comments were targeted at Florida, than Michigan.

### IV.  Conclusion

For the reasons stated above, exercising personal jurisdiction over Prendiville would violate the Due Process requirements of the Constitution. LLH has failed to demonstrate that Prendiville's page on RealSelf is sufficiently interactive to establish purposeful availment in Michigan. LLH has also failed to show that Prendiville purposefully availed itself of acting or producing consequences in Michigan because his actions are not sufficient focused on the state nor would the state feel the brunt of any alleged injury.

Accordingly, Prendiville's motion to dismiss for lack of personal jurisdiction is GRANTED.

SO ORDERED.