Craig **CUNNINGHAM**, Plaintiff,

v.

**RAPID RESPONSE MONITORING SERVICES, INC., et al.,** **Defendants.**

NO. 3:15–cv–00846

United States District Court, M.D. Tennessee, Nashville Division.

Signed 04/26/2017

Craig Cunningham, Nashville, TN, pro se.

Michael T. Schmitt, Ortale, Kelley, Herbert & Crawford, David A. Changas, Lewis, Thomason, King, Krieg & Waldrop, P.C., Nashville, TN, for Defendant.

## MEMORANDUM OPINION

WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE

Before the Court is a Report and Recommendation of the Magistrate Judge ("R & R") (Doc. No. 81) making the following recommendations:

1. The motion to dismiss (Doc. No. 58) filed by Defendants Rapid Response Monitoring Services, Inc. and Russell MacDonnell ("RRMS Defendants") should be granted because Plaintiff Craig Cunningham lacks Article III standing to pursue his claims;

2. If Cunningham is held to have standing, Cunningham's request for leave to conduct limited discovery on the issue of personal jurisdiction with regard to David Roman, John Coursey, and John Keith ("Individual Defendants") (Doc. No. 78) should be denied on the merits because Cunningham has failed to show any persuasive basis upon which he should be permitted to conduct additional discovery to support his twice-amended complaint, and Individual Defendants' Motion to

Dismiss (Doc. No. 70) should be granted; and

3. To the extent that the RRMS Defendants request an award of attorney's fees in their favor (Doc. No. 59 at 24–25), such a request should be denied at this time as premature.

Plaintiff has filed Objections (Doc. No. 84) and Amended Objections (Doc. No. 85). The Court has reviewed the R & R and the parties' briefs and has conducted a de novo review of the record. Insofar as Plaintiff's objections pertain to Recommendations 2 and 3, they are **OVERRULED** and the Magistrate Judge's Recommendations are **ADOPTED**. For the reasons discussed below, the Court **DECLINES TO ADOPT** Recommendation 1 and the RRMS Defendants' Motion to Dismiss will be **GRANTED** in part and **DENIED** in part. Individual Defendants' Motion to Dismiss will be **GRANTED**. Count II will be dismissed as to all parties, and Counts I and III will be dismissed as applied to Russell MacDonnell, David Roman, John Coursey, and John Keith. Count I will also be dismissed insofar as it relies on a theory of apparent authority against RRMS Defendants. Cunningham's request to conduct discovery on the question of personal jurisdiction (Doc. No. 78) will be **DENIED**.

## I. BACKGROUND

Cunningham is a Davidson County resident who claims to have received at least twenty-eight phone calls, sometimes only one or two seconds apart, from callers purporting to be conducting a "safety survey" but in fact marketing home security systems and related services. (Doc. No. 57 at ¶¶ 1, 13, 27.) Cunningham participated in one of those calls—he says, for the purpose of ascertaining the identity of the

party responsible—and found that it consisted of a pre-recorded message instructing him to press '1' to speak to an agent about the survey. (Id. at ¶¶ 13– 14.) The marketing effort turned out to be in support of a deal pursuant to which the recipient would accept the installation of a "free" home security system by Security Systems Inc. d/b/a Safeguard America ("Safeguard America") and would agree to pay ongoing fees for monitoring services to be provided by Rapid Response Monitoring Services, Inc. ("RRMS"). (Id. at ¶¶ 35–43.)

■ Cunningham indicated to follow-up callers that he was interested in the offer, and he met with the installer, but the Complaint is somewhat unclear with regard to whether he ever actually received the system. (Id. at ¶¶ 20–22.) In his Amended Objections, Cunningham states that he did not receive the system and that his dealings with the Safeguard America were in the furtherance of his research to support this case. (Doc. No. 85 at ¶¶ 15–17.) This Court's docket shows that Cunningham is a serial plaintiff in cases involving unsolicited telemarketing. See, e.g., Cunningham v. Newport Mktg., LLC, No. 3:14–cv–02400; Cunningham v. Park Lane Digital Media, No. 3:15–cv–00467; Cunningham v. Trilegiant Corp., No. 3:15–cv–00989; Cunningham v. Ignite Capital, LLC, No. 3:15–cv–00894; Cunningham v. Endless Access LLC, No. 3:15–cv–00178; Cunningham v. The Altitude Grp., LLC, No. 3:15–cv–00929.[1]

Cunningham identified a number of potential defendants related to the security system marketing scheme and filed this pro se action. Safeguard America. and Homeland Security, LLC, are corporations

---

1. The Court may take judicial notice of entries from its docket or another court's, although it may not credit disputable facts therein as evidence. See In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 468 (6th Cir. 2014).

whose representatives allegedly spoke to Plaintiff on the telephone. (Doc. No. 57 at ¶¶ 2, 6, 30.) RRMS allegedly provides the alarm monitoring service used in the alarm systems installed by Safeguard and Homeland. (Id. at ¶¶ 4, 42–43.) Cunningham also named various individual defendants based on their status as officers and/or managers of those entities. Counts I and II respectively assert claims under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA"). (Doc. No. 57 at ¶¶ 81–84.) Count III alleges civil conspiracy to violate the TCPA (Id. at ¶¶ 85–86.) Both the RRMS Defendants and the Individual Defendants have filed motions asking the Court to dismiss Cunningham's claims. (Doc. No. 58; Doc. No. 70.) Cunningham, in response to those motions, seeks discovery regarding personal jurisdiction over the Individual Defendants. (Doc. No. 78.) The R & R recommends that no discovery be granted and the case be dismissed because Cunningham lacks standing to bring his claims.

## II. ANALYSIS

### A. Standard of Review

Pending before the Court are motions to dismiss pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6).

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss...generally come in two varieties: a facial attack or a factual attack." Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." Id. "When considering a factual attack upon the court's jurisdiction, the court may weigh the evidence, and no presumption of truth applies to the plaintiff's factual allegations." Hickam v.

Segars, 905 F.Supp.2d 835, 838 (M.D. Tenn. 2012) (citing Gentek, 491 F.3d at 330). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." Gentek, 491 F.3d at 330.

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction. When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. Beydoun v. Wataniya Rests. Holding, Q.S.C., 768 F.3d 499, 504 (6th Cir. 2014) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)). To defeat the Rule 12(b)(2) motion, the nonmoving party "need only make a prima facie showing of jurisdiction." Id. at 504 (quoting CompuServe, 89 F.3d at 1262). "[A] court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal,...because we want to prevent nonresident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." CompuServe, 89 F.3d at 1262 (internal quotation and emphasis omitted). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff...alleges collectively fail to state a prima facie case for jurisdiction." Id.

Rule 12(b)(6) governs dismissal for failure to state a claim upon which relief can be granted. Rule 12(b)(6) requires the Court to take all the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679, 129 S.Ct. 1937.

## B. Standing

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" required to establish standing. Spokeo, Inc. v. Robins, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 581 (6th Cir. 2016) (quoting Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606–07 (6th Cir. 2007)). The Supreme Court has recently emphasized that the requirement that an injury-in-fact be "concrete and particularized" encompasses two distinct requirements. Spokeo, 136 S.Ct. at 1548. "For an injury to be 'particularized,' it

'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." Id. Unless an alleged injury satisfies both requirements, it cannot give rise to standing under Article III.

The injuries associated with unwanted marketing calls may be comparatively slight, but they are both real and well documented. Unwanted telemarketing can be a "nuisance" and "an intrusive invasion of privacy." Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227). Abusive telemarketing can also "waste the recipients' time" and may even in some cases "impede the free flow of commerce." Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc., 757 F.3d 540, 544 (6th Cir. 2014) (citing Ira Holtzman, C.P.A. v. Turza, 728 F.3d 682, 684 (7th Cir. 2013)). Such intangible harms were no strangers to the courts even before Congress chose to address them—"[a]ctions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing Restatement (Second) of Torts § 652(B)).

In 1991, Congress, in part due to the interstate character of much telemarketing, elected to combat certain particularly unwelcome telemarketing practices by adopting the TCPA.[2] 47 U.S.C. § 227. The

---

2. "The Act bans certain practices invasive of privacy and directs the Federal Communications Commission . . . to prescribe implementing regulations." Mims, 565 U.S. at 371, 132 S.Ct. 740. Among its restrictions, the TCPA

"generally prohibits making nonemergency, unsolicited calls advertising 'property, goods, or services' using automatic dialing systems and prerecorded messages to telephones and cellular phones." Van Patten, 847 F.3d at

TCPA provides for enforcement both by state governments, 47 U.S.C. § 227(g)(1), and private individuals who are the targets of certain prohibited practices, 47 U.S.C. § 227(b), (c)(5). Congress's conclusion that the harms addressed by the TCPA were sufficient to support a private cause of action guides this Court's standing analysis but is not conclusive: although a plaintiff cannot "automatically satisf[y] the injury-in-fact requirement" merely because "a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right," "the judgment of Congress play[s an] important role[ ]" in evaluating whether the injury underlying a statutory cause of action is sufficiently concrete. Spokeo, 136 S.Ct. at 1549. That role is especially pronounced where a harm is concrete but not wholly tangible, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id.

The TCPA was "[p]assed in response to '[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes.'" Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc., 788 F.3d 218, 221 (6th Cir. 2015) (quoting Mims, 565 U.S. at 370–71, 132 S.Ct. 740). A Senate sponsor of the TCPA expressed the public's discontent with unsolicited telemarketing as follows: "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." Mims, 565 U.S. at 384, 132 S.Ct. 740 (quoting 137 Cong. Rec. 30,821–22 (1991)). Hyperbolic though the Senator's comments may be, they highlight Congress's ability, as a body directly accountable to voters, to hear and heed public cries about

what injuries are real to them. Congress, presumably in response to the voices of the very people whom the TCPA is drafted to protect, concluded that the real injuries associated with unwanted telemarketing were sufficient to support a cause of action. This Court agrees.

 Perhaps recognizing that it cannot persuasively challenge an ordinary consumer's standing under the TCPA, the RRMS Defendants argue that Cunningham lacks standing because he is a "professional TCPA plaintiff" who has filed numerous suits under the TCPA, and therefore he suffered no real injury because he, in fact, welcomed any calls that might support a cause of action. (Doc. No. 59 at 1, 7–9.) The RRMS Defendants model their argument in significant part on the reasoning adopted by the Western District of Pennsylvania in Stoops v. Wells Fargo Bank, N.A., 197 F.Supp.3d 782, 800 (W.D. Pa. 2016), where that court concluded that a TCPA plaintiff lacked standing because her "only purpose in using her cell phones [was] to file TCPA lawsuits" and therefore she did not experience an actual invasion of privacy. Although the RRMS Defendants at this stage lack the substantial record relied upon by the Pennsylvania court, they seek instead to rely on audio recordings of Cunningham's conversations with the relevant telemarketers, arguing that the recordings are appropriate for consideration either because the calls were mentioned in Cunningham's Complaint or because Rule 12(b)(1) contemplates the possibility of a factual challenge as well as a facial challenge.

Even if the Court considers the calls, however, they tell the Court little more than it can see by looking at its own docket and Cunningham's own admissions. The calls show that Cunningham appears to

1041 (quoting 47 U.S.C. § 227(a)(5), (b)(1)(A)(iii)).

have been very good at eliciting information from the callers that he could later use in this lawsuit, which the RRMS Defendants suggest demonstrates that he was cultivating a TCPA claim. Cunningham's Second Amended Complaint, though, openly admits that the reason he eventually accepted one of the calls was "to ascertain the identity of the party placing" them, and Cunningham has explained his sleuthing in significant detail himself. (Doc. No. 57 at ¶ 13.) His later pleadings are entirely straightforward that he was in fact cultivating a claim. (Doc. No. 85 at 10 ("The only reason why the Plaintiff faked interest in the calls was to identify the seller of goods/services that was behind the calls.")). Cunningham's numerous lawsuits show that he is acutely aware of his rights under the TCPA and the potential that he could reap monetary rewards from them. Whether the Court considers the audio recordings or not, it is safe to say that, when the telemarketers in this case called a phone belonging to Cunningham, they—presumably unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned plaintiff, likely primed and ready to take them to court if their actions violated the TCPA.

▮ Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no "amateurs only" rule. See Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."). Nor is there anything out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury. The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc., 747 F.3d 489, 492 (7th Cir. 2014). Designing a cause of action with the purpose of enlisting the public in a law's enforcement scheme is a well-established tool that can be found in areas ranging from antitrust [3] and civil rights law [4] to environmental law [5] and false claims.[6] While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do

---

3. See Ill. Brick Co. v. Illinois, 431 U.S. 720, 746, 97 S.Ct. 2061, 2075, 52 L.Ed.2d 707 (1977) (discussing "the legislative purpose in creating a group of 'private attorneys general' to enforce the antitrust laws").

4. See Fox v. Vice, 563 U.S. 826, 833, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011) ("When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority.").

5. See Moulton v. U.S. Steel Corp., 581 F.3d 344, 350 (6th Cir. 2009) (discussing how plaintiffs "may act as private attorneys general to enforce the Clean Air Act...by bringing a citizen suit if the federal and state authorities fail to address their allegations").

6. See U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 507 (6th Cir. 2009) (discussing, in case involving alleged Medicare fraud, how the False Claims Act "encourag[es] 'whistleblowers to act as private attorneys-general' in bringing suits for the common good" (quoting Walburn v. Lockheed Martin Corp., 431 F.3d 966, 970 (6th Cir.2005))).

they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury.

The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. (See Doc. No. 57 at ¶ 78 (stating that Defendants infringed on Cunningham's "right to be left alone")). Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as Stoops endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes. The TCPA entitles a plaintiff to statutory damages in the generous amount of $500 per violation—a figure that can be tripled for a willful and knowing violation. 47 U.S.C. § 227(b)(3), (c)(5). The Court ventures to guess that many ordinary people—not merely "professional plaintiffs"—would accept the fleeting invasion of their privacy associated with an unsolicited robo-call for the reward of $1500—or even $3000, if more than one TCPA provision was violated. See Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011) ("We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list re-

quirements, § 227(c)(5)—even if both violations occurred in the same telephone call."). If Cunningham has forfeited his right to privacy because he allegedly welcomed the calls, so too have those potential plaintiffs—or, at the very least, they lost their privacy rights the moment they understood they could sue to vindicate them. The RRMS Defendants seem to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA.

The Constitution requires no such result. The appropriate constitutional inquiry, rather, is whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward. Cunningham, like every other private citizen, has rights to privacy and seclusion recognized by the law and protected from certain trespasses on those rights. The Court sees no authority for the proposition that his privacy interests ceased to exist merely because he realized that he could profit from suing for their invasion.

■ The Magistrate Judge was similarly unconvinced by Stoops but recommended, more narrowly, that the Court conclude that Cunningham lacked standing because his Complaint suggests that he may have accepted the free home security system that he was offered. (Doc. No. 81 at 1207–08.) That analysis assumes, though, that an individual who ultimately acquiesces to a marketing effort could not have been injured by being inundated by that effort unlawfully and without his consent. There is nothing inconsistent, though, about wanting a home security system and not wanting to be robo-called about it. The point of the TCPA is not to protect consumers from offers themselves, but the abusive mechanisms by which those offers are conveyed. "[I]t is the fact of the call (or

calls) that creates the injury sufficient to confer standing." Ung v. Universal Acceptance Corp., 198 F.Supp.3d 1036, 1039 (D. Minn. 2016). That injury would not be undermined if Cunningham ultimately found the Defendants' offer—which could have been conveyed to him through any number of lawful means—worth taking.

The Court therefore concludes that Cunningham has averred a concrete and particularized injury sufficient to confer standing, and the Court will not dismiss his claims on that ground. The Court reaches this decision without prejudice to any eventual substantive defense based on actions by Cunningham to invite the Defendants' calls, should one be raised and have merit.

## C. Zone of Interests

The RRMS Defendants argue, in the alternative, that even if Cunningham meets the minimum constitutional requirements for bringing suit, he does not have a cause of action under the TCPA because his injury does not fall within the zone of interests that the Act was intended to protect. The requirement that a statutory cause of action be brought by a person within the statute's protected zone of interests has sometimes been referred to as a "prudential standing" doctrine. E.g., Latin Americans for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin., 756 F.3d 447, 462 (6th Cir. 2014) ("Prudential standing exists if the interest the plaintiff seeks to protect is within the 'zone of interests' to be protected or regulated by the statute at issue." (citing Friends of Tims Ford v. TVA, 585 F.3d 955, 967 (6th Cir. 2009))). The Supreme Court, though, has clarified that "'prudential standing' is a misnomer as applied to the zone-of-interests analysis, which asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute.'" Lexmark Int'l, Inc.

v. Static Control Components, Inc., —— U.S. ——, 134 S.Ct. 1377, 1387, 188 L.Ed.2d 392 (2014) (quoting Ass'n of Battery Recyclers, Inc. v. EPA, 716 F.3d 667, 675–76 (2013) (D.C. Cir.) (Silberman, J., concurring)). Because the zone-of-interests test is ultimately rooted in the substantive boundaries of the statute at issue, the Court looks to the "traditional tools of statutory interpretation" to determine "whether [the] legislatively conferred cause of action encompasses [the] particular plaintiff's claim." Id.

The RRMS Defendants' zone-of-interests argument echoes their argument on constitutional standing: they suggest that Cunningham is a professional plaintiff, and that the TCPA only contemplates causes of action arising out of calls to ordinary consumers, a class from which they consider him to be excluded. That argument is flatly refuted by the structure of the TCPA itself. The TCPA does not merely contemplate self-interested plaintiffs—it encourages them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer). The Court cannot read the TCPA and imagine that Congress intended to exclude plaintiffs such as Cunningham. If anything, it intended to recruit them, incentivizing them by offering them such sizable rewards. Cunningham's injuries are well within the zone of interests contemplated by the TCPA, and any interpretation of the TCPA that excluded him would actively frustrate the purpose of the statute.

## D. Count I

The TCPA makes it generally unlawful "to make any call [without] the prior express consent of the called party...using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number as-

signed to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). While the text of the TCPA attaches liability to the person that "make[s]" the call, the FCC has interpreted the Act to reach "sellers" who can be held liable for the acts of "a third-party marketer . . . under federal common law principles of agency."[7] In re Joint Petition Filed by Dish Network, LLC, et al., 28 F.C.C. Rcd. 6574 at ¶ 1 (2013) ("Dish"). Those principles, the FCC concluded, "include[e] not only formal agency, but also principles of apparent authority and ratification." Id. at ¶ 28. "Apparent authority" under the TCPA "holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Id. at ¶ 34. Liability based on ratification arises when a seller "ratifies [the unlawful acts] by knowingly accepting their benefits"—for example, "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." Id. A seller's liability for the activities of a third-party robo-caller must nevertheless be tied into some identifiable agency principle—there is no strict liability merely because the unlawful calls were made "on behalf of" the seller. Id. at ¶ 31.

The RRMS Defendants argue first that they cannot be held vicariously liable because RRMS sells its monitoring services not directly to the consumer but to Safeguard America, and therefore RRMS is not a "seller" as that term is used by the FCC in its interpretation of the TCPA. See, e.g., 47 C.F.R. § 64.1200(f)(9) ("The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.") They liken RRMS's position to that of the manufacturer of a product sold at retail pursuant to a retailer's unlawful telemarketing. The FCC has made clear that, insofar as such a relationship severs the possibility of traditional agency liability, it will shield the manufacturer from liability under the TCPA. See id. at ¶ 45 ("In any event, to the extent that [a retail] store is selling on its own account—i.e., it has purchased goods from a manufacturer and is re-selling them—the manufacturer would not be a seller at all."). Whether a party is ultimately responsible for actions under agency principles, however, is highly fact-dependent. Id. at ¶ 46 (detailing factors to consider in vicarious liability inquiry). RRMS identifies no legal grounds for assuming that the mere existence of a middleman categorically defeats the possibility of agency liability under federal common law principles, if RRMS's actions would otherwise be sufficient to give rise to that liability.

The RRMS Defendants argue next that Cunningham has failed to plead with specificity any facts on which he could premise a theory of actual authority, apparent authority, or ratification. Cunningham has pled generally that RRMS, Safeguard America, and Homeland Security all, in

---

**7.** The FCC's 2013 guidance on this topic is directed at the TCPA provisions regarding home telephones—which discuss "initat[ing]" a call, 47 U.S.C. § 227(b)(1)(B)—not the provisions involving cellular phones—which discuss "mak[ing]" a call, 47 U.S.C. § 227(b)(1)(A). See Dish, 28 F.C.C. Rcd. at ¶ 25. The Court, however, does not find that the distinction between the two terms robs the FCC's interpretation of any force, and the RRMS Defendants appear to concede that the 2013 guidance applies at least generally to the cellular phone provisions. (Doc. No. 59 at 12.)

some way, "directed the lead generation calls to be placed," but he concedes in the Second Amended Complaint that "it isn't clear absent discovery which entity was directly responsible for contracting" with the callers. (Doc. No. 57 at ¶¶ 29, 32.) Cunningham does, however, sketch out at least some basic details behind the parties' respective roles, alleging that RRMS "authorized Safeguard America to act on their behalf to generate leads and obtain customers for alarm monitoring services." (Id. at ¶¶ 42–43.) The RRMS Defendants have provided a copy of a 2006 contract and 2013 addendum between RRMS and Safeguard America that, they assert, governed their relationship relevant to this case.[8] (Doc. No. 60–1; Doc. No. 60–2.) Those contracts alone do not, on their faces, expressly authorize Safeguard America to engage in any unlawful telemarketing on RRMS's behalf.

Actual authority, though, may be express or implied. See Bergin Fin., Inc. v. First Am. Title Co., 397 Fed.Appx. 119, 124 (6th Cir. 2010). The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business in the field of security system marketing. Such questions of fact would be inappropriate for resolution on a motion to dismiss. It is similarly premature to draw any conclusion about ratification. Cunningham has alleged an unlawful telemarketing scheme the end result of which was the generation of business for RRMS, and he has alleged that RRMS was an active participant in that scheme. While Cunningham has not alleged every detail of the relationship between the Defendants, the Court

recognizes that those limitations are in significant part due to the posture of the case. Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery. As long as he has pled facts sufficient to support a plausibly claim for relief, Plaintiff is not required to illuminate every corner of defendants' relationships at the pleading stage.

Rule 12(b)(6) does, however, require a party to allege at least some facts supportive of any asserted theory of liability and, insofar as Cunningham relies on apparent authority, he has failed to do so. "Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." Deschamps v. Bridgestone Ams., Inc. Salaried Employees Ret. Plan, 840 F.3d 267, 279 (6th Cir. 2016) (citing Anderson v. Int'l Union, United Plant Guard Workers of Am., 150 F.3d 590, 593 (6th Cir. 1998)). Cunningham has not alleged any statements by RRMS, as apparent principal, that would manifest that Safeguard America or any other relevant person was its agent for the purpose of the calls. The Court therefore will dismiss Count I against RRMS insofar as it relies on a theory of apparent authority, but will otherwise leave the count intact.

### E. Count II

The RRMS Defendants argue that Count II should be dismissed because the regulation on which Cunningham relies, 47 C.F.R. § 64.1200(d), cannot give rise to a

---

**8.** "[A] court deciding a motion to dismiss can consider documents not attached to a plaintiff's complaint when those documents are referenced in the complaint and central to the plaintiff's claim." Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield of Mich., 655 Fed.Appx. 483, 487 n.3 (6th Cir. 2016). Cunningham's complaint explicitly refers to contracts between RRMS and Safeguard America. (Doc. No. 57 at ¶ 62.)

cause of action under 47 U.S.C. § 227(c)(5). 47 U.S.C. § 227(c)(5) creates a cause of action for any person "who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the *regulations prescribed under this subsection* (emphasis added)." The regulations to which subsection (c)(5) refers are, by the plain language of the statute, those that the FCC is directed to adopt pursuant to 47 U.S.C. § 227(c)(1)–(4), "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Although subsection (c) grants the FCC some latitude to "compare and evaluate alternative methods and procedures," 47 U.S.C. § 227(c)(1)(a), it is widely associated with the FCC's establishing and maintaining a national "do-not-call list." See Hamilton v. Spurling, No. 3:11CV00102, 2013 WL 1164336, at *1 n.2 (S.D. Ohio Mar. 20, 2013) ("Pursuant to the authority granted to them under 47 U.S.C. § 227(c), the FCC adopted a national do-not-call registry providing 'residential consumers with a one-step option to prohibit unwanted telephone solicitations,' effective October 1, 2003.")

47 C.F.R. § 64.1200(d) is not directly concerned with the *national* do-not-call list, but the requirement that companies maintain *internal* do-not-call lists: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The Sixth Circuit, however, has expressly referred to 47 C.F.R. § 64.1200(d) as a regulation arising out of 47 U.S.C. § 227(c)(1):

> In addition to the restrictions on automated telephone equipment, the TCPA instructs the FCC to issue regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Accordingly, the FCC issued regulations prohibiting "person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining" a do-not-call list. 47 C.F.R. § 64.1200(d).

Charvat, 656 F.3d at 443–44. The RRMS Defendants, on the other hand, direct the Court's attention to the Southern District of Ohio's opinion in Burdge v. Association of Health Care Management, Inc., No. 1:10-CV-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011), where it concluded that 47 C.F.R. § 64.1200(d)(4) was "promulgated pursuant to section 227(d) of the TCPA," which directs the FCC to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone." 47 U.S.C. § 227(d)(3).

Taken in isolation, it is plausible that 47 C.F.R. § 64.1200(d)(4)—which concerns required disclosures during telemarketing calls—could have been promulgated under 47 U.S.C. § 227(d). Cunningham, however, does not allege only violations of that requirement, but the broader scheme embodied by 47 C.F.R. § 64.1200(d), which includes more substantive requirements such as requirements for adequate training and written policies. 47 C.F.R. § 64.1200(d)(1)–(2). While many portions of 47 C.F.R. § 64.1200 could arguably be attributed to more than one subsection of the TCPA, the Court ultimately agrees with the Sixth Circuit that the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations. Ac-

cordingly, a violation of 47 C.F.R. § 64.1200(d) can give rise to a claim under 47 U.S.C. § 227(c)(5).

The R & R, however, identifies another fault in Count II: Cunningham alleges only calls to his cellular phone. (Doc. No. 81 at 1209–10.) The TCPA generally distinguishes between "residential" lines and other protected lines, although it provides some protections to the owners of both. Compare 47 U.S.C. § 427(b)(1)(B) (setting conditions for use of robo-calls to residential phones) with 47 U.S.C. § 427(b)(1)(A) (setting conditions for use of robo-calls to cellular and enumerated other phones); see also Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1250 (11th Cir. 2014) ("To start with, the case concerned 47 U.S.C. § 227(b)(1)(B), which prohibits 'initiat[ing] any [prohibited] telephone call to any residential telephone line. . . .' [T]he telephone number in question here . . . is a cell-phone number."); Bates v. I.C. Sys., Inc., No. 09-CV-103A, 2009 WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to cellular and residential lines."). A cause of action under subsection (c)(5) must be brought against a party that initiated a "call for telemarketing purposes to a residential telephone subscriber."

■ By Cunningham's own account, his allegations involve a cellular phone number. It may be that, in some cases, an individual who relies on a cellular phone may nevertheless fall within the definition of a "residential telephone subscriber" under the Act. See Lee v. Loandepot.com, LLC, No. 14-CV-01084-EFM, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016) ("To prevail under 47 C.F.R. § 64.1200(c)(2), Plaintiff must establish that his cellular number is used for residential purposes.") Cunningham, however, has pled no facts sufficient for this Court to draw that conclusion here, and Cunningham's Objections to the R & R identify no faults in the Magistrate Judge's conclusion in this regard; in fact, it is not clear that he objects to this conclusion at all. Count II, then, will be dismissed.

## F. Count III.

■ The RRMS Defendants argue that Count III should be dismissed because Cunningham's conspiracy allegations are merely conclusory. "Conclusory allegations of a conspiracy are insufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Sanders v. Hood, No. 09-CV-14054-DT, 2009 WL 5169990, at *2 (E.D. Mich. Dec. 17, 2009) (citing Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987)). As the R & R correctly observes, Cunningham has offered little, if anything, in response to the RRMS Defendants' arguments on this count. (Doc. No. 81 at 1210.) Nevertheless, "the movant must always bear [its] initial burden regardless [of] if an adverse party fails to respond[,] . . . [even] in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Rees v. Corr. Corp. of Am., No. 4:15-CV-2050, 2015 WL 7568659, at *2 (N.D. Ohio Nov. 24, 2015) (quoting Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991)). Accordingly, the Court will examine the Complaint to determine whether the RRMS Defendants have overcome their initial burden of establishing that the Complaint is insufficient with regard to the conspiracy count.

The Sixth Circuit has set forth the general elements of a civil conspiracy claim as follows:

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the

illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

Hooks v. Hooks, 771 F.2d 935, 943–44 (6th Cir. 1985) (citing Hobson v. Wilson, 737 F.2d 1, 51–52 (D.C. Cir. 1984); Hampton v. Hanrahan, 600 F.2d 600, 620–21 (7th Cir. 1979)).

■ In addition to alleging that all three corporate entities at issue in this case "directed" that the unlawful calls be made (Doc. No. 57 at ¶ 29), Cunningham describes the parties' respective roles in the underlying telemarketing scheme as follows:

> [RRMS] sought and wanted Safeguard America to procure customers for their services and paid Safeguard America to do so. In turn, Safeguard America sought customers to buy alarm systems and paid Homeland Security to obtain these customers. Homeland Security and Safeguard America contracted with a telemarketing company to place calls on behalf of Defendant Homeland Security for the purpose of generating leads for the benefit of all parties: Homeland Security, [RRMS], and Safeguard America.

(Id. at ¶ 64.) These allegations, taken together, are sufficient to meet the minimum required for an allegation of conspiracy, particularly in light of "the liberal standards that apply [for pro se litigants] at the pleading stage." See Johnson v. Stewart, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010). Cunningham alleges a single plan to market home security systems and services to consumers through unlawful telemarketing. While RRMS may or may not have known every detail about the plan, it shared its general conspiratorial objective and acted in furtherance thereof by making its services available. The Court will not dismiss Count III at this early stage.

## G. Claims Against MacDonnell

■ The RRMS Defendants also argue that the allegations against RRMS CEO Russell MacDonnell are conclusory and that there is no basis for asserting liability to MacDonnell himself. Cunningham's allegations regarding MacDonnell, like his allegations against the other individual defendants, do not detail any individual actions that would support his personal liability beyond the generic assertions that, as CEO of RRMS, he was ultimately responsible for its involvement in any actionable calls. (Doc. No. 57 at ¶¶ 53–54.) Such conclusory assertions are insufficient to state a claim for individual liability against MacDonnell. The claims against him will be dismissed.

## H. Claims Against Individual Defendants

The Court adopts the Magistrate Judge's well-reasoned recommendation that Cunningham's claims against the Individual Defendants be dismissed because the Court lacks personal jurisdiction. (Doc. No. 81 at 1208–09.)

## III. CONCLUSION

For the above reasons, the RRMS Defendants' Motion to Dismiss (Doc. No. 58) will be **GRANTED** in part and **DENIED** in part. Individual Defendants' Motion to Dismiss (Doc. No. 70) will be **GRANTED**. Count II will be **DISMISSED** as to all parties, and Counts I and III will be **DISMISSED** as applied to Russell MacDonnell, David Roman, John Coursey, and John Keith. Count I will also be **DISMISSED** insofar as it relies on a theory of apparent authority against RRMS Defen-

dants. Cunningham's request to conduct discovery on the question of personal jurisdiction (Doc. No. 78) will be **DENIED.**

An appropriate Order is filed herewith.

## REPORT AND RECOMMENDATION

### Filed 02/02/2017

BARBARA D. HOLMES, United States Magistrate Judge

By Order entered August 5, 2015 (Docket Entry No. 4), the Court referred the above captioned action to the Magistrate Judge for pretrial proceedings under 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure.

Presently pending is the motion to dismiss second amended complaint and motion to strike of Defendants Rapid Response Monitoring Services, Inc. and Russell MacDonnell (Docket Entry No. 58) and the motion to dismiss of Defendants David Roman, Adam Coursey, and John Keith (Docket Entry No. 70). Plaintiff has responded in opposition to both motions. *See* Docket Entry Nos. 74 and 78. Set out below is the undersigned Magistrate Judge's recommendation for disposition of the motions.

## I. BACKGROUND

Craig Cunningham ("Plaintiff") is a resident of Nashville, Tennessee. He alleges that in June 2015, he received a total of 28 unsolicited telephone calls to his cellular phone from the same unknown number. *See* Second Amended Complaint (Docket Entry No. 57) at ¶¶ 13–18. He answered one of these calls, ignoring the rest, and heard a pre-recorded message instructing him to "press 1 to speak to an agent regarding a safety survey." *Id.* at ¶ 14. Plaintiff participated in the survey and was informed that he would be entered in a drawing for an alarm system. He was sub-

sequently called on June 29, 2015, by a representative of either Security Systems, Inc., d/b/a Safeguard America and/or Homeland Security, LLC, who offered him the installation of a free home alarm system with his only cost being the price of the monthly alarm monitoring service, which he was told was provided by Rapid Response Monitoring Services, Inc. *Id.* at ¶¶ 33–39. Plaintiff apparently agreed to the installation, resulting in additional phone calls about the installation, *id.* at ¶¶ 19–20, and Plaintiff met with an installation technician at Plaintiff's residence in July to have the alarm system installed. *Id.* at ¶ 21.

Based upon these events, Plaintiff brought this *pro se* lawsuit on July 31, 2015, asserting two counts for statutory and actual damages under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA"), as well as a count for civil conspiracy. In Count I, he alleges that Defendants' actions constitute multiple breaches of the TCPA because Defendants used an automated telephone dialing system to place calls to Plaintiff's cell phone in violation of 47 U.S.C. § 227(b). *See* Second Amended Complaint at ¶ 82. In Count II, he alleges that Defendants' actions constitute multiple violations of 47 U.S.C. § 227(c)(5) "by way of" 47 C.F.R. § 64.1200(d) because Defendants failed to comply with the requirements to maintain employees and train employees on the use of a do-not-call list. *Id.* at ¶ 84. In Count III, he alleges that Defendants engaged in a civil conspiracy to violate the TCPA in an attempt to solicit and sell alarm devices and monitoring services. *Id.* at ¶ 86.

Named as defendants to the lawsuit are Security Systems, Inc., d/b/a Safeguard America, Inc. ("Safeguard"), Homeland Security, LLC ("Homeland"), and Rapid Response Monitoring Services, Inc. ("Rapid Response"). Safeguard and Homeland are

alleged to be Florida corporations whose representatives spoke to Plaintiff on the telephone. Rapid Response is alleged to be a New York corporation that provides the alarm monitoring service used in the alarm systems installed by Safeguard and Homeland. Plaintiff also names several individuals as defendants: Laura and David Roman ("Romans"), alleged to be corporate officers of Safeguard; John Keith ("Keith") and Adam Coursey ("Coursey"), alleged to be corporate officers and managers of Homeland; and Russell MacDonnell ("MacDonnell"), alleged to be the chief executive officer for Rapid Response.[1] He alleges that these individuals also bear personal liability for the alleged violations of the TCPA.

## II. TELEPHONE CONSUMER PROTECTION ACT

The TCPA regulates the use of telephone technology and seeks to curb abusive telemarketing practices that threaten the privacy of consumers and businesses. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012); *Ashland Hosp. Corp. v. Service Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 740 (6th Cir.) *cert. denied,* —— U.S. ——, 134 S.Ct. 257, 187 L.Ed.2d 148 (2013). Among other things, the TCPA places restrictions on the use of automated telephone equipment and provides that:

> it shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile ra-

dio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action for violations of subsection 227(b). 47 U.S.C. § 227(b)(3).

The TCPA also directs the FCC to prescribe regulations to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(1); *Mims*, 132 S.Ct. at 746. This has resulted in federal regulations set out at 47 C.F.R. § 64.1200(d) prohibiting "person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining" a do-not-call list. *See Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011). The TCPA provides for a private right of action for violations of the regulations implemented pursuant to subsection 227(c). 47 U.S.C. § 227(c)(5).

## III. MOTION TO DISMISS OF RAPID RESPONSE AND MACDONNELL

Defendants Rapid Response and MacDonnell (hereinafter referred to collectively as the "Rapid Response Defendants") raise several arguments for dismissal of Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Memorandum in Support (Docket Entry No. 59). First, they contend that Plaintiff is a "professional plaintiff" who has filed no less than 50 lawsuits seeking recovery under the TCPA and similar statutes, *id.* at 7, and that he lacks standing to bring this action under the TCPA because, 1) he has not suffered an injury-in-fact and, thus, lacks constitution-

---

**1.** Although Plaintiff's original and first amended complaints named additional defendants, these additional entities and individu-

als have either been dismissed or were not named in Plaintiff's Second Amended Complaint.

al or Article III standing, and, 2) he does not fall within the zone of interest protected by the TCPA and, thus, lacks statutory standing. *Id.* at 5–10. They further argue that Plaintiff's allegations fail to support a claim that they violated Section 227(b) (Count I) and that Plaintiff's claim for a violation of 47 C.F.R. § 64.1200(d) pursuant to Section 227(c)(5) (Count II) fails to assert a viable legal claim for relief. *Id.* at 11–22. They also argue that Plaintiff's conspiracy claim and his claims against Defendant MacDonnell as an individual are based on conclusory allegations that do not support claims for relief. *Id.* at 23–24. Finally, Defendants assert that the TCPA does not provide for an award of attorney's fees and that Plaintiff himself should have attorney's fees assessed against him for bringing the instant lawsuit in bad faith. *Id.* at 24–25. The Rapid Response Defendants support their motion with the affidavit of Defendant MacDonnell and attached documents, *see* Docket Entry No. 60, and with an audio recording of phone calls purporting to involve Plaintiff. *See* Docket Entry Nos. 61–63.

Plaintiff responds by disputing the merits of the arguments for dismissal made by the Rapid Response Defendants. *See* Response in Opposition(Docket Entry No. 74). Plaintiff does, however, withdraw his request for an award of attorney's fees. *Id.* at 25, ¶81.

## IV. MOTION TO DISMISS OF DAVID ROMAN, ADAM COURSEY, and JOHN KEITH

Defendants Roman, Coursey, and Keith (hereinafter referred to collectively as "the Individual Defendants") seek dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting that the Court lacks personal jurisdiction over them. *See* Memorandum in Support (Docket Entry No. 71).[2] The Individual Defendants declare that they are not, and have never been, residents of Tennessee,[3] that they do not transact business or conduct activities in Tennessee, that they do not own, possess, or lease real property in Tennessee, and that they do not otherwise have any connection to Tennessee. They further declare that they did not place any phone calls individually or on behalf of any entity and have never had any contact whatsoever with Plaintiff. They support their motion with their own declarations, *see* Docket Entry No. 28-1 (Coursey), Docket Entry No. 28-1 (Keith), and Docket Entry No. 41-1 (Roman), and they argue that Plaintiff's pleadings fail to allege any facts that support the assertion of personal jurisdiction over them as individuals.

Plaintiff responds by arguing that he should be permitted a 75–day period to conduct discovery on the issue of personal jurisdiction. *See* Response in Opposition (Docket Entry No. 78). He further argues that his allegations and the theories of liability under the TCPA against the corporate officers are sufficient to support the assertion of personal jurisdiction over them. *Id.* The Individual Defendants have filed a reply, in which they dispute that Plaintiff has raised any argument in his

2. Defendants previously filed separate motions to dismiss based on a lack of personal jurisdiction, which were dismissed without prejudice when the Second Amended Complaint was filed. *See* Order entered August 9, 2016 (Docket Entry No. 56). Defendants assert that the legal basis for their argument remains unchanged by the filing of the Second Amended Complaint, and they rely on their previously filed memoranda of law (Docket Entry Nos. 29 and 42). *See* Docket Entry No. 71.

3. Defendant Roman declares that he is a resident of Connecticut, as does Defendant Keith, and Defendant Coursey declares that he is a resident of Florida.

response that warrants the denial of their motion to dismiss. *See* Docket Entry No. 80.

## V. STANDARDS OF REVIEW

Rule 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction. As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011).

When the defense of lack of personal jurisdiction is raised in a motion brought under Rule 12(b)(2) and resolved without an evidentiary hearing, Plaintiff needs only make a *prima facie* showing of personal jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Theunissen v. Matthews*, 935 F.2d 1454, 1458–59 (6th Cir. 1991). However, in the face of a properly supported motion for dismissal, Plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction. *Theunissen*, 935 F.2d at 1458. When resolving a Rule 12(b)(2) motion without conducting an evidentiary hearing, the Court must view the pleadings and supporting affidavits in the light most favorable to Plaintiff. *Id.* As the party bringing the lawsuit, Plaintiff must establish that this Court has personal jurisdiction over Defendants. *See Beydoun v. Wataniya Restaurants Holding*, 768 F.3d 499, 504 (6th Cir. 2014); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

A motion to dismiss brought under Rule 12(b)(6) is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in Plaintiff's favor, and draw all reasonable inferences in favor of Plaintiff. *See In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir.2009). Although the complaint need not contain detailed factual allegations, Plaintiff must provide the grounds for the entitlement to relief sought. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The factual allegations contained in the complaint must be enough to show a plausible right to relief. *Twombly*, 550 U.S. at 555–61, 127 S.Ct. 1955. More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. *Id.*; *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436–37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. *See Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

## VI. ANALYSIS

As set out below, the Court finds that Plaintiff lacks standing to pursue his claims in the instant case. This finding is sufficient to warrant dismissal of the action in its entirety. Nonetheless, the Court briefly addresses some of Defendants' alternative arguments for dismissal given

that extensive analysis is not required to show that these arguments have merit.[4]

## A. Plaintiff's Article III Standing

Because the issue of Article III standing implicates the Court's jurisdiction to hear a case, the Court is required to address this aspect of the Rapid Response Defendants' lack of standing argument as a threshold issue. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015). The burden rests with Plaintiff to show that he has Article III standing, and failure to satisfy this burden requires dismissal of the action. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

Article III standing requires Plaintiff to show: 1) an injury in fact; 2) a sufficient causal connection between the injury and the conduct complained of; and 3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). In addressing a claim brought under the Fair Credit Reporting Act, the Supreme Court in *Spokeo* clarified that, while the mere assertion that a statutorily created right has been violated is not enough, in and of itself, to satisfy the injury in fact requirement, the assertion of intangible harms caused by the alleged violation of the statute may suffice for standing purposes if the intangible harms are both "concrete and particularized" and "actual or imminent." 136 S.Ct. at 1548–49.

Plaintiff has alleged the type of intangible harms that have frequently been found by courts to be the type of harms sought to be remedied by the TCPA: the rights to be left alone and to privacy and the right to be free from unwanted intrusions, frustration, inconvenience, stress, and annoyance caused by telemarketing calls. *See* Second Amended Complaint at ¶¶ 78–80. *See also Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 WL 3820195, *2 (E.D. Ky. July 11, 2016) (the plaintiff's allegations of invasion of privacy, intrusion upon seclusion, stress, extreme anxiety, aggravation, nervousness, humiliation, worry and deep fear of losing home caused by unwanted cell phone calls were sufficient to satisfy the injury in fact requirement under TCPA).

However, Plaintiff also alleges that he willingly participated in the phone survey upon answering the call in question, that he conversed about the alarm system being offered in follow-up phone calls, that he agreed to accept and he scheduled the installation of the alarm system, and that he ultimately met with the alarm installer at his residence for the installation of the alarm system. Given these allegations, it escapes the Court how Plaintiff can plausibly assert that the calls at issue were unwanted by him or infringed upon any right sought to be protected by the TCPA. While intangible harms can support a showing of Article III standing, there must always be a showing of a " 'de facto' injury, meaning that the injury 'must actually exist.'" *Spokeo*, 136 S.Ct. at 1548. The al-

---

4. The decision not to include analyses of some of Defendants' alternative arguments for dismissal is a decision based upon the efficient use of judicial resources, and this decision does not reflect on the arguments' merits or lack thereof and does not prejudice Defendants' ability to later raise the arguments if the recommendation for dismissal of the action based upon lack of Article III standing is not adopted.

leged conduct of Plaintiff in response to the phone calls is simply inconsistent with any plausible allegation that he suffered an actual injury because of unwanted telemarketing calls. Indeed, contrary to being harmed, his own allegations are that he obtained a free alarm system as a result of the phone calls at issue. Given the somewhat unusual allegations before the Court, Plaintiff fails to satisfy the injury in fact requirement of Article III. Plaintiff's lack of standing requires dismissal of this case in its entirety.[5]

To the extent that Plaintiff brings to the Court's attention cases in which privacy interests and other harms resulting from unwanted telemarketing calls were found sufficient to support an injury in fact, *see* Plaintiff's Response in Opposition (Docket Entry No. 74) at 2–3, the Court does not find these cases persuasive given the unique facts of this case as set out above. Additionally, while the Court does not base its conclusion about Plaintiff's lack of Article III standing upon *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782 (W.D. Pa. 2016), a case cited to by the Rapid Response Defendants in which a TCPA plaintiff was found to lack Article III standing because of facts showing that she was a "professional plaintiff" who invited telephone calls in order to file TCPA lawsuits, *Stoops* illustrates that unique factual situations can have the effect of limiting standing in TCPA cases and that the Court is not required to turn a blind eye toward the practical reality of the particular case that is in front of the Court.[6]

**5.** Dismissal of the claims against all corporate Defendants is warranted because Plaintiff alleges that they all "directed the lead generation calls" placed to him, resulting in his acceptance of the solicitation for a free alarm system. *See* Second Amended Complaint at Docket Entry No. 57, ¶ 29. More importantly, even though the other Defendants do not raise the lack of standing argument, Article III standing is a threshold determination that

## B. Personal Jurisdiction

Due Process requires that the Individual Defendants be subject to the personal jurisdiction of the Court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). When a defendant is not physically present in the forum, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). "Minimum contacts" exist when "the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

The minimum contacts necessary to establish personal jurisdiction can either be general or specific contact. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). General personal jurisdiction requires a defendant to have "continuous and systematic" contacts in the forum state such that the forum court may exercise jurisdiction over the defendant regardless of whether the claim

requires dismissal of the entire action when that standing is lacking.

**6.** In reaching its recommendation on the issue of Article III standing, the Court has not relied upon evidence outside the pleadings or the audio recording provided by the Rapid Response Defendants. The defect in Plaintiff's standing arises from his own allegations.

at issue is related to the defendant's activities in the state. *Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746, 769, 187 L.Ed.2d 624 (2014); *Neogen Corp.,* 282 F.3d at 889. Specific personal jurisdiction, on the other hand, is based on a defendant's contacts with the forum state to the extent that those contacts arise from the claims brought by the plaintiff. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). *See also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Neogen Corp.,* 282 F.3d at 888. For a court to exercise specific jurisdiction over a defendant, the plaintiff must prove: (1) the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industs.,* Inc., 401 F.2d 374, 381 (6th Cir. 1968). The key question is whether the defendant purposefully availed himself. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 550–51 (6th Cir. 2007).

▄ Plaintiff has not rebutted the Individual Defendants' motion by producing an affidavit setting out facts that are sufficient to support a finding of personal jurisdiction over them. Further, even when viewed in the light most favorable to Plaintiff, the allegations of his Second Amended Complaint do not support a finding of personal jurisdiction over the Individual Defendants. There are no allegations that plausibly show that general personal jurisdiction exists over these out-of-state Defendants, and Plaintiff does not appear to even argue that general personal jurisdiction exists over them. Further, the factual allegations set out in the Second Amended Complaint upon which Plaintiff relies for asserting personal jurisdiction over them, *see* Docket Entry No. 57 at ¶ 49–52; Docket Entry No. 78 at 3, ¶ 11, are conclusory, self-serving, and woefully insufficient to support a finding of specific personal jurisdiction over the Individual Defendants. There are no facts alleged showing that any of the Individual Defendants had any connection with Tennessee whatsoever or took any action to purposefully avail themselves to Tennessee.[7]

Plaintiff's entire argument that personal jurisdiction exists over the Individual Defendants is based upon his contention that he has raised theories of potential liability under the TCPA against the corporate officers. However, mere theories of liability do not establish personal jurisdiction, facts do, and it is well settled that jurisdiction over individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation. *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974).

## C. Plaintiff's Claim under 47 U.S.C. § 227(c)(5) (Count II)

This claim has no legal merit based upon the facts of this action. Plaintiff seeks

---

7. Plaintiff has not made a persuasive showing that discovery should be permitted on the issue of the personal jurisdiction of the Individual Defendants, if for no other reason, because Plaintiff has amended his complaint twice and still fails to establish personal jurisdiction. Any decision by the Court on this issue is appropriately made upon the record that is presently before the Court without the need of additional discovery or an evidentiary hearing. Additionally, the discovery requested by Plaintiff is nothing more than an open-water fishing expedition by which he simply hopes to net some information to support his claims.

civil damages pursuant to 42 U.S.C. § 227(c)(5) based upon Defendants' alleged violations of the regulations set out at 47 C.F.R. § 64.1200(d). However, the specific language of the TCPA provides that the regulations implemented pursuant to Subsection 227(c) apply only to telephone solicitations made to "residential telephone subscribers." 47 U.S.C. § 227(c)(1). Further, the plain language of the regulation relied upon by Plaintiff states:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d). The private right of action created by 47 U.S.C. § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers. As clearly stated by the Sixth Circuit in *Charvat*,

> In addition to the restrictions on automated telephone equipment, the TCPA instructs the FCC to issue regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Accordingly, the FCC issued regulations prohibiting "person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining" a do-not-call list. 47 C.F.R. § 64.1200(d).

656 F.3d at 443–44, and

> Subsection (c) and its accompanying regulations in 47 C.F.R. § 64.1200(d) impose minimum procedures for maintaining a do-not-call list that apply to all calls—live or automated—initiated for

telemarketing purposes to residential telephone subscribers.

*Id.* at 449.

Plaintiff alleges only calls to his cellular phone. Accordingly, he fails to state a claim for relief under 47 U.S.C. § 227(c)(5). Plaintiff's arguments to the contrary, *see* Docket Entry No. 74 at 20–23, lack legal merit. To the extent that Plaintiff was awarded damages under 47 U.S.C. § 227(c)(5) upon default in other prior cases based on claims involving calls made to cellular phones, the default awards in those cases do not control the instant case given the clarity of the law on this issue.

### D. Plaintiff's Civil Conspiracy Claim (Count III)

The Rapid Response Defendants have set out legally compelling arguments for dismissal of Plaintiff's civil conspiracy claim. *See* Docket Entry No. 59. Plaintiff has not responded to these arguments, *see* Docket Entry No. 74, and has, thus, waived any rebuttal to the legal argument for dismissal. *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, *2 (6th Cir.1989) (unpublished table decision). In the absence of a responsive argument from Plaintiff showing why his civil conspiracy claims should not be dismissed, it is not the duty of the Court to find grounds to defeat the motion to dismiss as it pertains to this claim. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992).

### RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge respectfully RECOMMENDS the following:

1. The motion to dismiss (Docket Entry No. 58) filed by Defendants Rapid Response Monitoring Services, Inc.

and Russell MacDonnell be GRANTED because Plaintiff lacks Article III standing to pursue his claims and that this action be DISMISSED.[8]

2. Plaintiff's request for leave to conduct limited discovery on the issue of personal jurisdiction (Docket Entry No. 78) be DENIED, either as moot due to dismissal of this case for lack of standing, or on the merits because Plaintiff has failed to show any persuasive basis upon which he should be permitted to conduct additional discovery to support his twice-amended complaint.

3. To the extent that the Rapid Response Defendants request an award of attorney's fees in their favor, *see* Docket Entry No. 59 at 24–25, such a request should be DENIED at this time as premature.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

---

8. Given that the lack of Article III standing warrants dismissal of the entire action, the other arguments made in the motion to dismiss filed by Defendants Rapid Response Monitoring Services, Inc. and Russell MacDonnell (Docket Entry No. 58), and the motion to dismiss of Defendants David Roman, Adam Coursey, and John Keith (Docket Entry No. 70) are MOOT. However, if the District Judge is disinclined to adopt the recommendation of the Magistrate Judge for dismissal of this action due to lack of standing, then the undersigned Magistrate Judge respectfully recommends that, for the additional reasons

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

stated, (i) the motion to dismiss filed by Defendants Rapid Response Monitoring Services, Inc. and Russell MacDonnell (Docket Entry No. 58) be GRANTED as to Counts II and III, and those claims be DISMISSED and (ii) the motion to dismiss of Defendants David Roman, Adam Coursey, and John Keith (Docket Entry No. 70) be GRANTED for lack of personal jurisdiction and all claims against the Individual Defendants be DISMISSED, leaving only Plaintiff's claims in Count I against the three corporate Defendants and Russell MacDowell.